[Crim. No. 2030. In Bank.—March 1, 1917.]

## In the Matter of the Admission of T. ALONZO WELLS, to Practice Law.

DISTRICT COURT OF APPEAL—TRANSFER OF CAUSES TO SUPREME COURT—EXTENT OF POWER OF TRANSFER.—The word "cause" as used in section 4 of article VI of the constitution, as amended in 1904, giving power to the supreme court to order any cause pending before a district court of appeal to be heard and determined by the supreme court, should be construed as having the same broad meaning as had been given to that word as used in section 2, conferring a similar power on the supreme court with respect to its department decisions. So construed, the power to transfer causes from the district court of appeal to the supreme court, either before or after judgment in the district court of appeal, includes every matter except *habeas corpus* proceedings, that may be decided by the district court of appeal.

ID.—ATTORNEY AT LAW—REVOCATION OF ORDER OF ADMISSION TO BAR—FRAUDULENT PROCUREMENT OF ORDER.—A decision made by the district court of appeal upon an application to revoke an order admitting a person to practice law on the ground that the original order was fraudulently procured comes within this power of transfer to the supreme court.

ID.—GOOD MORAL CHARACTER OF APPLICANT—BURDEN ON APPLICANT TO SHOW—REJECTION FOR WANT OF.—Upon an attorney's application for admission to practice law in this state on certificate, the burden is on him to produce satisfactory evidence of good moral character,

and the court may reject him for want of good moral character, although it does not appear that he had been guilty of acts which would be cause for his disbarment or suspension.

Id.—Revocation of Order Admitting to Practice—Fraudulent Concealment of Real Character—Pleading—Inquiry into Character.—An application to revoke an order admitting an attorney to practice law, on the ground that he obtained the order by means of a fraudulent concealment of his real character, is not a proceeding in disbarment. Allegations as to his character are necessary in such application in order to show that if there shall be a *bona fide* inquiry regarding it, the court would be authorized to reject him because of the facts alleged. If the court should conclude that the fraudulent means were sufficiently established to justify a revocation of the order, it would then be its duty to inquire again into his moral character, and that inquiry would have the same scope, and be subject to the same rules, as if it had been made upon his original application.

Id.—Extent of Inquiry to Show Present Character.—Upon such inquiry, the court would not be confined to acts which have occurred since the enactment of the amendment of 1911 to section 287 of the Code of Civil Procedure, but may consider any acts or conduct occurring at any time, provided they have a legal tendency to prove his present character.

Id.—Fraudulently Obtaining Credit—Inducing Witnesses to Conceal Truth.—One who obtains credit by concealing material facts from the creditor, and who, while endeavoring to practice in the superior court by indirection before he is admitted as an attorney, endeavors to induce witnesses to conceal the truth and to evade the giving of an honest answer, is not a person of that high character which the state intends shall be possessed by those who practice as attorneys in the courts.

Id.—Fraud on Court—Admission Based on Foreign License—Concealment of Facts Showing Want of Character.—An applicant for admission to the bar, who, after withdrawing two applications made to the district court of appeal of the district of his residence because of objections to his moral character, surreptitiously, and without changing his residence, goes to another state and secures a license to practice from that state, and then returns and upon such license applies for admission to and is admitted by the district court of appeal of another district, where the facts affecting him were unknown to the court, is guilty of a fraud upon the court, and his conduct in so doing is proof that he is not a fit person for admission to the bar.

APPLICATION to set aside and vacate an order of the District Court of Appeal of the Third Appellate District admitting a person to practice law in the courts of this state.

The facts are stated in the opinion of the court.

Wm. J. Hunsaker, E. E. Keech, J. C. Burke, S. A. Reinhaus, L. A. West, and R. Y. Williams, for Petitioners.

H. N. Mitchell, W. E. Ferguson, M. C. Atchison, and T. A. Wells, *in pro per.*, for Respondent.

SHAW, J.—On October 20, 1915, T. Alonzo Wells applied to the district court of appeal of the third district for admission to practice law, under section 279 of the Code of Civil Procedure, and in support thereof produced a license purporting to admit him to practice law in the state of Nevada, issued to him by the supreme court of that state in October, 1915, and procured one H. N. Mitchell, an attorney at law regularly admitted to practice in this state, to vouch for the good moral character of said Wells, and to move said court that his said application be granted. Thereupon said district court granted the application and made an order admitting said T. Alonzo Wells to practice law in the courts of this state.

Thereafter, on December 8, 1915, five attorneys, members of the bar association of Orange County, and constituting a committee appointed by said association to act in that behalf, filed in said district court a petition to set aside and vacate the aforesaid order admitting said Wells to practice. The basis of this petition, in brief, was that said Wells was not a person of good moral character, as represented to said court upon his admission, but was an untrustworthy person who had committed several acts of corruption, fraud, and bad faith, particularly set forth, which showed him to be unfit for admission as an attorney; that he had twice applied for admission as an attorney to the district court of appeal of the second district in which he resided, upon examination under sections 275 and 277, inclusive, of the Code of Civil Procedure, and on each occasion he had withdrawn his application for admission because of similar objections to his moral character, made on behalf of said bar association to said court; that to avoid these objections, he thereafter, in May, 1915, went to the state of Nevada, where he was not known, and there procured a license to practice law in that state; that he procured the same with the intention of using it as a means of obtaining admission to practice law in California; that to carry out such intent he

applied to the district court of appeal of the third district for admission; that the judges of said court had no knowledge of his previous applications to the second district court of appeal, nor of his said bad character or fraudulent purpose; that said Wells, taking advantage of the ignorance of the justices of said court as to said facts, fraudulently concealed the same and did not inform said court thereof, but, as above stated, procured said Mitchell to represent to said court that he was a person of good moral character, and that by means of said fraudulent concealment and practices the said court was misled and by reason thereof made the order admitting him to practice.

Upon the filing of this petition Wells was cited to appear and show cause why the order admitting him to practice should not be revoked. He appeared and demurred to the petition, and also moved to strike out all the allegations thereof, on the ground that it does not state facts sufficient to authorize any relief or action by the court, and that the matters alleged were irrelevant and immaterial. The district court of appeal sustained both the demurrer and the motion and thereupon dismissed the petition.

Within sixty days thereafter, this court granted the application of said petitioners to have said cause heard and determined before it, and made its order to this effect.

When the matter came up for hearing in this court, the respondent, Wells, moved to dismiss the proceedings on the ground that the decision and order of the district court of appeal sustaining the demurrer and dismissing the petition is final, and that this court has no jurisdiction or power, in such a case, to order a rehearing before it, or to take jurisdiction of such a matter for further hearing and decision.

The consideration of this question requires a determination of the meaning and effect of the following clause of section 4 of article VI of the constitution, as amended in 1904, creating district courts of appeal:

"The supreme court shall have power to order any cause pending before the supreme court to be heard and determined by a district court of appeal, and to order any cause pending before a district court of appeal to be heard and determined by the supreme court. The order last mentioned may be made before judgment has been pronounced by a district court of appeal, or within thirty days after such judgment shall have become final therein. The judgments of the district courts of

appeal shall become final therein upon the expiration of thirty days after the same shall have been pronounced."

The particular clause involved here is that which gives the supreme court power "to order any *cause* pending before a district court of appeal to be heard and determined by the supreme court." The contention is that the matter before the district court was not a "cause" within the meaning of that word as used in the above-quoted clause of the section.

The purpose intended to be secured by this clause, particularly the part thereof now under consideration, may best be ascertained by considering the history of the development of the judicial system of this state. The present constitution was adopted in 1879. Prior thereto the supreme court consisted of five justices. The accumulation of business had demonstrated that the court was unable to dispose of the increasing business which came to it. It was necessary, therefore, to create a court with greater capacity for the dispatch of business. With that object in view, a court of seven justices was constituted and, for further efficiency, it was divided into two departments composed of three justices, and provision made that each department should have power to hear and determine causes coming before the court. It was foreseen, however, that differences would arise between the departments which, unless controlled, would result in two systems of law on some subjects, one followed by one department and another by the other department. To prevent this it was provided that where a cause had been decided in a department a rehearing might be ordered before the whole court. The clause providing for this reads in part as follows: "Where a cause has been allotted to one of the departments, and a judgment pronounced thereon, the order must be made within thirty days after such judgment, and concurred in by two associate justices, and if so made it shall have the effect to vacate and set aside the judgment." This provision has always been understood to apply to all cases, matters, and proceedings of every description. It has been the unvarying custom of the court in Bank to entertain an application for rehearing of any matter decided in department, regardless of its nature or character. The rule has been applied in original proceedings of all kinds, in motions to dismiss appeals and other matters, as well as in ordinary cases on appeal. The word "cause," in the clause above quoted, was under-

stood to be broad enough to include everything that could possibly come before the department for decision.

In 1903 the judicial business of the state had again increased to such an extent that the supreme court and its departments were unable to keep abreast of the work. This condition demanded a remedy, and the legislature set about the task of devising some method whereby the capacity of the higher courts to dispatch business could be increased. To this end the present system was adopted. The supreme court was continued with the same powers and departments as before, with the exception of some minor changes in its appellate jurisdiction. Three district courts of appeal were created, each consisting of three justices. These courts were given jurisdiction of appeals in certain cases. It was hoped that the division of jurisdiction would equalize the labors of the three district courts of appeal, and the supreme court. It was seen, however, that the division might prove to be unequal. To remedy this the supreme court was given power to transfer at will from any one of the courts to another, before hearing or decision, so as to apportion with fairness the burden of the work. (*Keech* v. *Joplin,* 157 Cal. 1, 6, [106 Pac. 222] ; *People* v. *Davis,* 147 Cal. 346, 348, [81 Pac. 718].) Again it was foreseen that in the district courts of appeal different conclusions would probably be reached, and that different systems of law might thereby gradually become prevalent in the respective districts. In *People* v. *Davis,* 147 Cal. 346, [81 Pac. 718], after stating that the power of transfer before decision was given to enable the supreme court to distribute thereby the work among the several courts so as to keep them all busy and thereby "secure a speedy disposition of pending cases," the court, obviously referring to the power of transfer after a decision by the district court, said that its purpose was "to secure harmony and uniformity in the decisions, their conformity to the settled rules and principles of law, a uniform decision throughout the state, a correct and uniform construction of the constitution, statutes and charters, and, in some instances, a final decision by the court of last resort of some doubtful or disputed question of law." The provision framed to accomplish these objects is similar to that in force respecting department decisions in the supreme court. The supreme court was given power in any matter decided by the district court of appeal to

vacate the decision and order it transferred to its own calendar for rehearing and decision. To describe the decisions subject to this power the word "cause" was selected. This was the word used in the clause of section 2 giving similar power over the department decisions, which, in that clause, as we have said, has been understood to apply to every matter that could be decided by a department. The familiar rule of construction requires that it be given a similarly broad meaning in the new provision, and to include every matter decided by a district court of appeal, and operating as a final decision or disposition thereof in that court. It is clear, therefore, that the power to transfer causes from the district court of appeal to the supreme court, either before or after judgment in the district court of appeal, was intended to have this all-embracing application.

We see no reason to doubt that a decision made by the district court of appeal upon an application to revoke an order admitting a person to practice law on the ground that the original order was fraudulently procured comes within the purview of this power of transfer. Such a decision may determine important rights of the parties in the particular case, and may also establish important principles and rules of law and practice applicable generally. The same necessity that the law of the state should be harmonious and uniform exists with respect to such matters as with regard to any other branch of the law. Our conclusion is that a matter of this character may be transferred from the district court of appeal to the supreme court in the exercise of this power by the latter.

The respondent cites, as holding to the contrary, the decision in *Ex parte Zany*, 164 Cal. 724, [130 Pac. 710], that this clause of section 4 is not applicable to *habeas corpus* proceedings. That decision was based upon the peculiar nature and effect of the writ of *habeas corpus*, the fact that a judgment in such cases had never in the history of the state been made subject to review, that it was not a bar where a prisoner was remanded to custody, but that he could immediately, without waiting sixty days, apply to the supreme court for a new writ and have his petition tried *de novo*, that no power of transfer or review was given after a discharge on *habeas corpus* on a writ issued by a single justice of the district court or by a justice of the supreme court,

and that no provision whatever was made by the clause for the custody of the prisoner during the sixty-day interval; from all of which circumstances it was concluded that it could not have been intended to extend the power to such cases. None of the reasons given applies to cases of any other kind. The Zany case is not analogous to the present case. The decision of the district court in this case, if not vacated by this means, will be conclusive of the rights of the parties. It is not necessary, and we do not deem it expedient, to extend the rule of the Zany case and make it applicable to other cases different in character and effect. The motion to dismiss the proceeding is, therefore, denied.

Upon the merits of the case the first question naturally arising is whether or not the acts charged against the applicant, Wells, were sufficient to establish his lack of good moral character. Prior to the year 1911, after an attorney had once been admitted to practice he could not be disbarred or suspended for acts involving moral turpitude, except where they constituted elements of a crime of which he had been convicted, or unless they constituted a violation of his oath as an attorney, or of some duty or responsibility resting upon him in his official capacity as an attorney. (Code Civ. Proc., sec. 287; *In re Collins*, 147 Cal. 8, 14, [81 Pac. 220].) In 1911 (Stats. 1911, p. 848), section 287 was amended by adding subdivision 5 thereto, which reads as follows:

"5. For the commission of any act involving moral turpitude, dishonesty or corruption, whether the same be committed in the course of his relations as an attorney or counselor at law, or otherwise, and whether the same shall constitute a felony or misdemeanor or not; and in the event that such act shall constitute a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disbarment or suspension from practice therefor."

It is contended on behalf of the applicant that upon an attorney's application for admission the court cannot reject him for want of good moral character, unless it appears that he had been guilty of acts which would be cause for his disbarment or suspension. We think this proposition cannot be sustained. On his admission on certificate he must produce "satisfactory evidence of good moral character." The burden is on him to do this. In a proceeding to disbar an

attorney the burden is on the accuser to prove moral turpitude. The requirement on his admission is to prevent the accrediting of untrustworthy persons as fit to receive the confidence attending upon the relation of attorney and client. The inquiry may extend to his general character as well as to particular acts. It is broader in its scope than that in a disbarment proceeding. The court may receive any evidence which tends to show his character for honesty, integrity, and general morality, and may no doubt refuse admission upon proofs that might not establish his guilt of any of the acts declared to be causes for disbarment.

The fact that the order admitting Wells to practice has already been made does not convert this into a proceeding in disbarment. The charge is that he obtained that order by means of a fraudulent concealment of his real character. The allegations as to his character are necessary in order to show that if there shall be a *bona fide* inquiry regarding it, the court would be authorized to reject him because of the facts alleged. If the court should conclude that the fraudulent means were sufficiently established to justify a revocation of the order, it would then be its duty to inquire again into his moral character, and that inquiry would have the same scope, and be subject to the same rules, as if it had been made upon his original application.

From this it would follow that the court would not be confined to acts which have occurred since the enactment of the aforesaid amendment of 1911 to section 287, but may consider any acts or conduct occurring at any time, provided they have a legal tendency to prove his present character.

We now come to the consideration of the sufficiency of the allegations relating to the moral character of the respondent. It is alleged, in effect, though not in the best form or manner, that in the year 1903 he obtained a loan of $550 upon the security of a note executed by his wife and himself, and upon the representation by him that his wife owned twenty-five acres of land free and clear of encumbrances, whereas in truth it was then encumbered by a homestead declaration duly made and recorded by her; that in the year 1914, while acting as adviser and assistant to the attorney for certain defendants in a criminal case in Orange County superior court, he advised and urged certain witnesses that they could testify

that they did not remember material facts within their knowledge, without danger to themselves, and thereby induced them to so testify. In a matter of this kind the form of the averments relating to the character of the applicant need not be closely scrutinized. If the case reaches the stage of inquiry on that subject, the court may inquire as to any facts bearing on the subject which are brought to its attention in any manner, whether by pleading or otherwise. In addition there are, of course, the facts above recited touching the manner in which he has sought to gain admission, which, if true, have a bearing upon his character.

While this conduct may not show great depravity of character, we think it must be admitted that it indicates in the respondent a want of that sincerity and integrity which the law demands of those who are to be allowed the privilege of practicing law. One who obtains credit by concealing material facts from the creditor and who, while endeavoring to practice in the superior court by indirection before he is admitted as an attorney, endeavors to induce witnesses to conceal the truth and to evade the giving of an honest answer, is not a person of that high character which the state intends shall be possessed by those who practice as attorneys in the courts.

With regard to the part of the case relating to the fraudulent means by which, as it is alleged, he gained admission and evaded meeting the objections, little need be said except to state some additional facts. It appears that he did not change his residence to Nevada, but went into that state solely for the purpose of there obtaining admission to practice and securing a license from that state. Under the rules of the supreme court made for the government of the district courts of appeal, persons who desire admission upon examination must apply to the district court of appeal of the district in which they reside. Wells resided, and apparently still resides, in Orange County, which is within the second district. The court of that district had made a rule that applications for admission upon examination should be filed ten days before the date fixed for such examination. It was also an established practice there for the clerk to send a copy of the application to the president of the bar association of the county in which the applicant resided. Upon his two previous applications for examination in that court this course

had been followed and, as above stated, upon being confronted with the objections now made, he had, on each occasion, withdrawn his application. It is alleged that he realized that he would be unable to secure admission upon examination, under these circumstances, and that with intent to evade the requirements above mentioned, to conceal the existence of the objections to his admission and then by indirection obtain admission, he went to the state of Nevada and secured admission there in October, 1915, and that in further pursuit of his intent to evade our laws and regulations he did not apply to the second district court of appeal for admission upon his certificate from Nevada, but presented the same and asked for admission in the third district court of appeal, where the facts were unknown to the court, and thereby procured the order sought to be vacated. If the allegations are true they tend to show that he was conscious of the fact that he could not gain admission in any forum where he would be met by evidence regarding his character, and that to avoid this necessity and evade the efforts of the bar association to prevent his admission he resorted to the circuitous method above detailed, took advantage of the lack of knowledge by the justices of the third district concerning his case, and thus procured the order, notwithstanding his unworthiness. His conduct in this respect not only constituted a fraud upon the court, but it affords additional proof that he is not a fit person for admission to the bar. The courts should be vigilant, not lax, to investigate such charges as are here made in regard to the character of an applicant for admission to the bar.

We do not think it advisable to take up in this court the investigation of these charges. It is proper to say that they are now mere allegations which put the court upon inquiry as to the truth of the matter. The law has devolved that duty upon the district court of appeal. The court that should conduct the investigation in this case, both as to the alleged fraud in obtaining the order and as to the good moral character of the applicant, is the district court of appeal of the third district, the court which, it is alleged, was improperly led to make the order sought to be revoked.

The motion to strike out the petition is denied and the demurrer to the petition is overruled.

It is ordered that the matter be transferred to the district court of appeal of the third district for further proceedings in accordance with this opinion.

Henshaw, J., Lorigan, J., Melvin, J., Sloss, J., and Lawlor, J., concurred.

ANGELLOTTI, C. J., Dissenting.—I dissent.

My view is that this matter is not one as to which this court has the power of transfer under the provisions of section 4 of article VI of the constitution, that the order purporting to transfer the same to this court after decision by the district court of appeal of the third appellate district is a nullity, and that we have no jurisdiction whatever in the matter. It may properly be added that it seems to me that what is said in the opinion as to the meaning of the word "cause" as used in the provision quoted in the opinion is contrary to our decision in *Ex parte Zany,* 164 Cal. 724, [130 Pac. 710], wherein it was held after most careful consideration, Mr. Justice Shaw alone dissenting, that no such power of transfer exists as to a *habeas corpus* proceeding. The opinion herein recognizes that decision as settling the law on that question.

Rehearing denied.