In the Matter of MAX SCHECHT, an Attorney, Respondent.

First Department, December 7, 1934.

*Einar Chrystie,* for the petitioner.

*George Frankenthaler,* for the respondent.

FINCH, P. J. This proceeding comes before this court upon a motion to confirm the report of an official referee finding the respondent, who was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court, First Department, on June 12, 1929, guilty of a false answer in a questionnaire signed and sworn to by him and filed with the committee on character and fitness; and also, as a second charge, of signing and swearing to an affidavit attached to an application for a marriage license upon respondent's third marriage, wherein he answered " single " when as a matter of fact his first marriage had been annulled and he had been divorced from his second wife.

The important facts in this proceeding are not disputed and indeed are virtually conceded. Although it may be possible, as urged by the respondent, to draw conflicting inferences from the documents and facts, the record amply sustains the conclusions of the referee.

As to the first charge, at the time that the respondent was examined by the committee on character and fitness he gave a sworn answer " No " to the question: " Have you ever been a party to or otherwise involved in any action or proceeding either civil or criminal?" And made no answer to the item in said questionnaire that, in the event his answer to the first question was " Yes," he was to give the facts and the name of the court and the date of the action. The facts are that the respondent eight or nine years before had been a party defendant in an action brought by his first wife to annul their marriage on the ground that he had made false and fraudulent representations at the time he induced her to marry him. Although this action was for annulment, a judgment of divorce was entered in favor of the plaintiff on default upon the ground of adultery, of which there was neither allegations nor proof.

The respondent seeks to excuse his answer to the item in the questionnaire on the ground that the annulment proceeding " was not in the foreground of his consciousness " and that his answer was an inadvertence. The respondent further urges in extenuation that before he filled out his questionnaire he and other candidates discussed the practice of the committee on character and fitness of searching for judgments against candidates. This in itself would have been instrumental in refreshing the recollection of respondent as to the action brought against him by his first wife. Also, respond-

ent was a trained lawyer having been admitted as a member of the Ohio bar and practiced there for one year and had then come to New York and been a clerk in active New York law offices and had passed the New York bar examination. With this experience, it is incredible that respondent could forget that his first marriage had been annulled by an action in which he was the defendant, and that by reason of this judgment he was enabled to marry a second time. The respondent further urges that even if the question which had been erroneously answered by him had been answered properly, there would not have been the slightest reason for disqualifying the respondent for admission to the bar. The learned referee, however, well answered this, as he has the other contentions of the respondent, when he says in his opinion: " The respondent maintains that he had nothing to fear from a disclosure of the judgment. I differ with him. The decision in the annulment action makes serious reflections upon his honesty. The mention of the judgment · in the questionnaire would have started an investigation by the Character Committee. Awkward questions would be put to the respondent which he would have great difficulty to answer persuasively. The respondent vigorously asserts that the charges in the complaint of the annulment action are false and that the testimony does not support the allegations of the complaint. I shall assume that he is correct in his contention. But the fact remains that the decision found the facts against him without any defense or objection on his part. If confronted with embarrassing questions his task to explain his inaction in the face of the charges of dishonesty and deception would have been a difficult one." Only one conclusion can be drawn from the record and that is that respondent deliberately concealed from the committee on character and fitness the fact of such judgment.

Upon the second charge the respondent falsely stated to a subregistrar in West New York, State of New Jersey, in connection with his application for a third marriage license, that he was single in response to the question whether he was divorced, a widower, or single. All the facts are admitted and are, that respondent had remarried in 1924 and in 1931 his second wife brought an action for absolute divorce in the State of California and, in June of that year, procured an interlocutory decree which would not become final for one year. Less than a month later the respondent applied for a marriage license and made the aforesaid statement that he was single. Before applying for his third marriage license the respondent had received a copy of the interlocutory decree in the California divorce action containing the specific notation, as follows:

" Notice — Caution

" This is not a judgment of divorce. The parties are still husband and wife, and will be such until a final judgment of divorce is entered after one year from the entry of this interlocutory judgment. The final judgment will not be entered unless requested by one of the parties."

The respondent contends that he examined the law after the receipt of this interlocutory decree and concluded that, despite this action and warning indorsed on the very decree, he was entitled to enter into a legal marriage outside the State of California. The respondent, therefore, urges that at most he made a terrible mistake in misconstruing the law of California whereby he deemed himself free to remarry in another State. This contention is obviously unsound, since it was not merely the present status of respondent that was covered by the question, which read as follows: " Are you divorced, a widower or single?" Following the answer of the question by the word " single," the respondent subscribed an oath that the answers were " true, full and perfect answers." The respondent urges that the subregistrar read the question to him and only asked him if he was single, to which he replied " Yes." The testimony of the subregistrar is that he read the full question to the respondent and received in answer the word " single." Furthermore, the subregistrar says that he did not issue licenses to marry in cases when the divorcee produced only an interlocutory decree. The respondent himself corroborates to a certain extent the subregistrar when he says: " He asked me whether I was single and I said ' Yes,' and to be frank with you it was such a delicate spot that I was just anxious to avoid it." Obviously, the respondent was anxious to marry and was willing to take this chance to secure his marriage license.

The finding of the referee on the second charge holding the respondent guilty is obviously sustained by the record.

Since it clearly appears that the respondent procured his admission to the bar by means of fraudulent concealment, his license to practice must be revoked.

Martin, O'Malley, Townley and Glennon, JJ., concur.

Admission revoked.