[853 NYS2d 333]

In the Matter of Israel G. Grossman (Admitted as Israel Gedaliah Grossman), a Suspended Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, March 18, 2008

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Naomi F. Goldstein* of counsel), for petitioner.

*Israel G. Grossman,* respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

Respondent Israel Grossman was admitted to the practice of law in the State of New York by the Second Judicial Department on May 2, 1979, under the name Israel Gedaliah Grossman.

Respondent's disciplinary history began with his misappropriation of confidential securities information from his former law firm employer, and subsequent sharing of the information with friends and relatives who traded the securities making approximately $1.5 million in illegal profits. As a result of those actions, respondent was convicted on August 18, 1987, after trial in the Southern District of New York, of 19 counts each of securities fraud and mail fraud. Respondent was sentenced to two years in prison. His conviction was affirmed on appeal (*United States v Grossman*, 843 F2d 78 [2d Cir 1988], *cert denied* 488 US 1040 [1989]). On January 26, 1988, this Court disbarred respondent based upon his felony conviction (*Matter of Grossman*, 135 AD2d 1 [1988]). Based upon the same allegations of security fraud which resulted in respondent's criminal conviction, the Securities and Exchange Commission (SEC) filed a complaint against respondent and all who profited from the inside information. In 1995, the Southern District entered judgment in favor of the SEC permanently enjoining respondent from future violations of the securities laws and ordering disgorgement by the defendants of all profits (*see Securities & Exch. Commn. v Estate of Hirshberg*, 101 F3d 109 [2d Cir 1996]). After spending a total of eight years petitioning the court to dismiss the order of disgorgement the Southern District, in 1999, issued a disgorgement order which held that respondent was jointly and severally liable for more than $2.5 million.

Respondent first applied for reinstatement to the practice of law in 1996, but the application was denied, primarily because he refused to acknowledge his criminal culpability or exhibit remorse for his conduct. Furthermore, the Hearing Panel which recommended denying his reinstatement noted that respondent had failed to disclose in his petition at least three legal actions

in which he was involved, including an action involving the SEC, and it rejected respondent's "tortured reading" of a question that inquired about any litigation that respondent may have been involved with. Respondent applied a second time for reinstatement, and on May 22, 2003, after a full hearing, we granted the application (*Matter of Grossman*, 305 AD2d 295 [2003]).

On January 12, 2006, the Committee served respondent with a notice and statement of 18 charges alleging violations of Code of Professional Responsibility DR 1-101 (a) (a lawyer is subject to discipline if he makes a materially false statement in, or has deliberately failed to disclose a material fact requested in connection with, his application for admission to the bar) and DR 1-102 (a) (4) (conduct involving dishonesty, fraud, deceit or misrepresentation), (5) (conduct prejudicial to the administration of justice) and (7) (conduct adversely reflecting on his fitness to practice law) (22 NYCRR 1200.2, 1200.3). The charges were based on false statements allegedly made by respondent on various license and employment applications made by him in connection with his attempt to work as an insurance and securities salesman before he was reinstated to the bar.

For example, the Committee claimed that, in filling out forms necessary to be licensed to sell insurance in New York and New Jersey, as well as on employment applications, respondent answered "no" to questions asking whether he had ever been convicted of a crime. In the New Jersey application he responded "no" to a question regarding whether he had "any business or professional license suspended or revoked." On an NASD registration form he responded negatively to a question asking whether any court had ever enjoined him in connection with any investment-related activity or if any court ever found he was involved in a violation of an investment-related statute or regulation. Respondent was charged with similar behavior in connection with applications to obtain and renew his notary public license.

The charges further alleged that respondent engaged in acts of dishonesty in submitting his two reinstatement applications. For example, the Committee claimed that respondent falsely denied in the applications that he had been asked to personally disgorge profits, and that he failed to disclose that he had obtained licenses to sell insurance, had applied for a license to sell securities, and continued to be licensed as a notary public. He was further charged with omitting from the applications the

facts that he was issued a citation by the Insurance Department stemming from his false statements on license applications.[1] Finally, the Committee asserted that respondent failed to disclose that the NASD had opened an investigation concerning his false statements on applications, which resulted in his being arrested and tried in connection with those false statements in the Southern District.[2]

Following the filing of formal charges the Committee sought respondent's interim suspension. On March 23, 2006, we immediately suspended respondent pursuant to 22 NYCRR 603.4 (e) (1) (iii), based on a record which revealed "a pattern of deceit on a number of applications for regulatory licenses, and employment contracts, in which respondent lied about his disbarment and the circumstances leading up to it" and that respondent made materially false statements and material omissions in his 2001 verified reinstatement application to this Court (*Matter of Grossman*, 29 AD3d 85, 86 [2006]).

In his answer to the charges respondent admitted the bare facts but offered affirmative defenses to rebut the conclusion that he engaged in professional misconduct. The parties entered into a prehearing stipulation limited to the exhibits proposed. On May 16 and May 17, 2006, a hearing was held before a Referee, at which respondent, at the time represented by counsel, and one witness testified. Respondent testified that his nondisclosure on the employment forms was due to his good faith belief that he was not required to disclose a criminal conviction that was more than five years old (or 10 years old for securities licensing). Respondent's employer at the time testi-

---

**1.** The citation was served after respondent, who had been terminated by an insurance employer upon its discovery of his conviction, applied to the Insurance Department for an exemption from the ban on participation in the insurance business imposed by the Violent Crime Control and Law Enforcement Act of 1994 (18 USC § 1033 [e] [1] [A]). In April 2002, a hearing officer concluded that respondent had "lied" on the 1994 license application and he had "knowingly failed to reveal his conviction" to the Department of Insurance. Although respondent was granted the exemption because there was no evidence that he was a present danger to the public (thereby retaining his license), he was ordered to pay a civil penalty in the amount of $5,000.

**2.** Respondent initially pleaded guilty to the criminal charges before a Magistrate, but the plea was rejected based upon respondent's equivocation on the issue of intent. Respondent was acquitted after a bench trial, although the basis for the acquittal is unclear. Ultimately, respondent agreed to an offer of settlement with the NASD in which he neither admitted nor denied the allegations but consented to the entry of findings that he "willfully failed to disclose material facts on a U-4 Form" and agreed to a one-year suspension and a $5,000 fine.

fied that he had in fact advised respondent of this five-year rule after he discussed it with an employment attorney whose current whereabouts were unknown. In addition, respondent testified that he did not sign certain of the documents but that a manager had signed his name to the forms. As to why he did not reveal during the reinstatement process any references to the fact that he had obtained insurance licenses, and that there were ongoing disciplinary proceedings before the Insurance Department and the NASD, not to mention a federal criminal matter, respondent variously testified that the information was not relevant because it was not reflective on his character or that the omissions were "mistakes" and that he did not have any intent to deceive. As to sanction, respondent urged the Referee to recommend no more than a brief suspension to run nunc pro tunc from the date of his interim suspension and the Committee suggested respondent have his license revoked or be disbarred.

The Referee issued a comprehensive 38-page report sustaining 17 of the 18 charges[3] and recommending respondent's law license be revoked. The Referee found that "[t]he record fully supports the conclusion that Respondent engaged in a deliberate and consistent *pattern* of nondisclosure of material information . . . not only to governmental licensing bodies and prospective employers, but to the Hearing Panel [which recommended his reinstatement], the Committee, the First Department—and even his disciplinary counsel." As to sanction, the Referee determined that respondent should not be disbarred, but rather that his license should be revoked, because it was fraudulently obtained in the first place.

A Hearing Panel heard oral argument and in its report concurred with the Referee's findings and conclusions and similarly recommended revocation of respondent's license or, in the alternative, disbarment. In sustaining the charges, the Panel noted that: "Based on the totality of the circumstances, Respondent's 'good faith' defense does not withstand scrutiny. Intent to deceive and the lack of good faith can be implied from the lack of any reasonable justification for his decision not to disclose material information."

The Committee now seeks an order pursuant to 22 NYCRR 605.15 (e) confirming the Hearing Panel's determination and

---

**3.** The Referee did not sustain charge 10, which alleged that respondent falsely denied in his first reinstatement application that he had been asked to personally disgorge profits.

revoking respondent's license to practice law or, in the alternative, disbarring respondent. By cross motion respondent seeks an order: (1) confirming the Hearing Panel's determination to dismiss charge 10 and, (2) disaffirming the determination of the Panel as to the remaining charges or, in the alternative, directing a hearing to consider new evidence of respondent's suitability to practice law.

We find that the evidence supports the Hearing Panel's findings of liability with respect to all 17 charges upheld by the Referee and that, therefore, the Panel's determination that respondent engaged in conduct that violated DR 1-101 (a) and DR 1-102 (a) (4), (5) and (7) should be confirmed. However, while we agree with the Panel that respondent is unfit to practice law, we believe the appropriate sanction is disbarment, not revocation. To be sure, it is logically appealing to revoke a license where an attorney only gained admission based on fraud. Indeed, we have chosen that path on several occasions (*Matter of Klein*, 242 App Div 494 [1934]; *Matter of Schecht*, 242 App Div 495 [1934]; *Matter of Carpel*, 178 App Div 146 [1917], *appeal dismissed* 222 NY 523 [1917]).[4] However, we have also disbarred attorneys who gained admission only to be later found to have perpetrated a fraud on the court (*see e.g. Matter of McDaniel*, 263 AD2d 209 [1999]). Under these circumstances, disbarment is the appropriate sanction, as respondent has engaged in a pervasive pattern of affirmative misrepresentations and failed to fully accept responsibility for his serious misconduct (*see e.g. Matter of Brooks*, 271 AD2d 127 [2000], *appeal and lv dismissed* 95 NY2d 955 [2000]).

Accordingly, the Committee's petition should be granted, the Hearing Panel's determination of liability as to all charges except charge 10 should be confirmed, the cross petition should be denied except to the extent it seeks to confirm the Hearing Panel's determination to dismiss charge 10, and respondent should be disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York.

TOM, J.P., MAZZARELLI, NARDELLI, GONZALEZ and MALONE, JJ., concur.

---

4. Each of these cases involved fraud in an initial application for a law license. We are unaware of any prior case involving fraud in an application for reinstatement to the bar.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof. Cross motion granted to the extent of dismissing charge 10, and otherwise denied.