93 Cal.Rptr.2d 298 (2000)
22 Cal.4th 430
993 P.2d 956
In re Mason Harry ROSE V. on Discipline.
No. S062859.
Supreme Court of California.
March 6, 2000.
*302 James Marvin Weinberg, Santa Monica, for Petitioner.
Robert Rudolph, San Francisco, for Jerome Berg as Amicus Curiae on behalf of Petitioner Mason Harry Rose V.
Marie M. Moffat, Richard J. Zanassi, San Francisco, and Jill A. Sperber, San Francisco, for Respondent State Bar of California.
GEORGE, C.J.
The State Bar Court recommends that we disbar petitioner Mason Harry Rose V. Petitioner has sought review of that recommendation and contends we must issue a writ of review, hear oral argument, and render a written opinion before ordering the discipline as recommended. According to petitioner, our summary denial of his petition for review of the State Bar Court's decision would be an unconstitutional attempt to invest the State Bar with judicial power, as well as a deprivation of his right to a judicial determination of whether he should be disciplined. Petitioner further contends that under the California Constitution he has a right to oral argument and a written opinion, and that the absence of these procedural safeguards violates the due process clause of the United States Constitution.[1]
We conclude that this court may summarily deny an attorney's petition for review of a State Bar Court decision recommending disbarment or suspension without violating constitutional principles. The State Bar Court exercises no judicial power, but rather makes recommendations to this court, which then undertakes an independent determination of the law and the facts, exercises its inherent jurisdiction over attorney discipline, and enters the first and only disciplinary order. Furthermore, because our denial of a petition for review of the State Bar Court recommendation is not a decision of a "cause," as that term is used in the state constitutional provision requiring such decisions to "be in writing with reasons stated" (Cal. Const., art. VI, § 14), we need not issue a written opinion before issuing the order. Nor does article VI, section 2, of the California Constitution confer a right to oral argument prior to issuance of our order. Finally, our consideration of the legal and factual assertions presented in a petition for review, together with our independent review of the record of the State Bar Court proceedings, satisfies the requirements of procedural due process.

I
The facts relevant to the State Bar Court's recommendation that petitioner be disbarred are undisputed for purposes of the present proceeding. Petitioner was admitted to the California State Bar in 1971. In Rose v. State Bar (1989) 49 Cal.3d 646, 262 Cal.Rptr. 702, 779 P.2d 761, we determined that petitioner committed numerous acts of misconduct between 1978 and 1985, including failure to communicate with clients and to provide services, improper client solicitation, and improper business dealings with a client. We ordered that petitioner be actually suspended from the practice of law for two years and placed on probation for five years. In 1992  only a few months after the period of actual suspension had ended  we again disciplined petitioner for similar misconduct occurring between 1984 and 1989, and ordered an additional period of actual suspension and probation. The conditions of probation required petitioner to complete ethics and law office management courses and to develop an approved law office management plan. Petitioner did not perform any of these conditions by June 1993, as required. After being notified by the State Bar that he had failed to comply with the probation conditions, how *303 ever, petitioner did satisfy these conditions by May 1994.
Relying upon his untimely completion of the conditions of probation, the State Bar charged petitioner with three counts of violating Business and Professions Code section 6103,[2] which provides that willful disobedience of a court order requiring an attorney to perform an act connected with his or her profession constitutes cause for disbarment or suspension. The State Bar Court hearing judge found that petitioner willfully violated section 6103, as charged in each of the three counts. The judge cited aggravating circumstances including petitioner's previous discipline imposed in 1989 and 1992, as well as additional periods of suspension we imposed in 1995 for petitioner's failure to satisfy other conditions of probation, which included filing timely reports, trust account audits, and an affidavit indicating compliance with the duties imposed upon suspended attorneys by rule 955 of the California Rules of Court.[3] In mitigation, the hearing judge credited petitioner's candid admission of misconduct and cooperation in the proceeding, his extensive community service, and his belated compliance with the three conditions of probation. Nevertheless, based upon petitioner's repeated violation of disciplinary orders and previous misconduct, the hearing judge recommended disbarment. The State Bar Court Review Department agreed with the hearing judge and also recommended disbarment.
Pursuant to section 6083, subdivision (a), and rule 952(a), petitioner filed in this court a petition for review of the State Bar Court's decision. The petition raises several issues regarding whether the evidence establishes a level of culpability sufficient to prove a willful violation of section 6103, and whether disbarment is appropriate discipline under the circumstances. In addition, petitioner contends that the State Bar Act is unconstitutional in failing to provide a right to judicial review by a court established pursuant to article VI of the California Constitution (hereafter, article VI). We ordered the State Bar to show cause why we "should not issue a writ of review and accord this proceeding plenary consideration notwithstanding [our] determination that no issue raised warrants consideration under California Rules of Court, rule 954(a)." Our order directs the parties to address whether there is a constitutional requirement of plenary consideration, as well as the criteria we may use in determining whether plenary review should be accorded.

II
We begin our analysis with an overview of State Bar Court disciplinary proceedings and provisions for review of State Bar Court decisions.
The State Bar is a constitutional entity, placed within the judicial article of the California Constitution, and thus expressly acknowledged as an integral part of the judicial function. (Art. VI, § 9; In re Attorney Discipline System (1998) 19 Cal.4th 582, 598-599, 79 Cal.Rptr.2d 836, 967 P.2d 49.) "`"We have described the bar as `a public corporation created ... as an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys.' [Citation.] In those two areas, the bar's role has consistently been articulated as that of an administrative assistant to or adjunct of this court, which nonetheless retains its inherent judicial authority to disbar or suspend attorneys. [Citations.]" [Citations.]'" (In re Attorney Discipline System, supra, 19 Cal.4th at pp. 599-600, 79 Cal.Rptr.2d 836, 967 P.2d 49.) The State Bar Court, however, is not itself a judicial court established by article VI.[4]
*304 For most of its history, the State Bar's disciplinary system was operated primarily with the assistance of volunteers, who acted as referees and made recommendations to the bar's board of governors. (See In re Attorney Discipline System, supra, 19 Cal.4th at p. 611, 79 Cal.Rptr.2d 836, 967 P.2d 49.) The board, in turn, made recommendations to this court regarding the discipline of attorneys. (§ 6078.) In 1988, the Legislature directed the board "to establish a State Bar Court, to act in its place and stead in the determination of disciplinary ... proceedings...." (§ 6086.5.) Pursuant to procedures it has adopted by rule, this court appoints the judges of the State Bar Court (rule 961), which includes a Hearing Department and a Review Department (§§ 6079.1, 6086.65).
The Hearing Department conducts evidentiary hearings on the merits in disciplinary matters. (Rules Proc. of State Bar (hereafter, Rules of Procedure), rules 2.60, 3.16.) An attorney charged with misconduct is entitled to receive reasonable notice, to conduct discovery, to have a reasonable opportunity to defend against the charge by the introduction of evidence, to be represented by counsel, and to examine and cross-examine witnesses. (§ 6085.) The Hearing Department renders a written decision recommending whether the attorney should be disciplined. (Rules Proc, rule 220.) Any disciplinary decision of the Hearing Department is reviewable by the Review Department at the request of the attorney or the State Bar. (Id., rule 301(a).) In such a review proceeding, the matter is fully briefed, and the parties are given an opportunity for oral argument. (Id., rules 302-304.) The Review Department independently reviews the record, files a written opinion, and may adopt findings, conclusions, and a decision or recommendation at variance with those of the Hearing Department. (Id., rule 305.) A recommendation of suspension or disbarment, and the accompanying record, is transmitted to this court after the State Bar Court's decision becomes final. (§ 6081; Rules Proc, rule 250.)
Although disciplinary proceedings in the State Bar Court include quasi-judicial evidentiary hearings and decisions rendered by official adjudicators, the State Bar Court is not an ordinary administrative agency. "[The State Bar Court] is not an administrative board in the ordinary sense of the phrase. It is sui generis. ... [¶] ... [I]n matters of discipline and disbarment, the State Bar [Court] is but an arm of this court, and ... this court retains its power to control any such disciplinary proceeding at any step. [Citation.]" (Brotsky v. State Bar (1962) 57 Cal.2d 287, 300-301, 19 Cal.Rptr. 153, 368 P.2d 697; see also In re Attorney Discipline System, supra, 19 Cal.4th at p. 599, 79 Cal.Rptr.2d 836, 967 P.2d 49 [The State Bar is not in the same class as state administrative agencies placed within the executive branch].) In creating the State Bar and the State Bar Court, the Legislature expressly acknowledged that this court retains all disciplinary authority the court had prior to the passage of the State Bar Act. (§§ 6087, 6100.) The State Bar may make only recommendations to this court, which undertakes an independent determination whether the attorney should be disciplined as recommended. (In re Attorney Discipline System, supra, 19 Cal.4th at pp. 600-601, 79 Cal.Rptr.2d 836, 967 P.2d 49; In re Shattuck (1929) 208 Cal. 6, 12, 279 P. 998.) This limitation upon the State Bar's authority distinguishes the State Bar Court from other quasi-judicial or administrative agencies rendering initial decisions  rather than recommendations  that subsequently may be reviewed by courts of record.
Just as the State Bar Court is unique, so are the disciplinary proceedings heard by the State Bar Court. "Proceedings before the State Bar are sui generis, *305 neither civil nor criminal in character, and the ordinary criminal procedural safeguards do not apply. [Citations.]" (Yokozeki v. State Bar (1974) 11 Cal.3d 436, 447, 113 Cal.Rptr. 602, 521 P.2d 858.) "State Bar disciplinary proceedings are administrative but of a nature of their own. [Citations.] It has been repeatedly held that they are not governed by the rules of procedure governing civil or criminal litigation [citations] although such rules have been invoked by the courts when necessary to insure administrative due process. [Citation.]" (Emslie v. State Bar (1974) 11 Cal.3d 210, 225-226, 113 Cal.Rptr. 175, 520 P.2d 991.)[5]
Provisions regarding review of State Bar Court decisions recommending disbarment or suspension are found in the Business and Professions Code and the California Rules of Court. The State Bar Court must file in this court a certified copy of its decision and the record of the proceeding. (§ 6081.) "Any person complained against ... may have the action of the [State Bar Court] ... reviewed by the California Supreme Court or by a California Court of Appeal in accordance with the procedure prescribed by the California Supreme Court." (§ 6082.)[6] A petition to review, reverse, or modify a decision recommending disbarment or suspension may be filed with this court within 60 days of the decision, and the petitioner has the burden of establishing error. (§ 6083, subds.(a), (c).) "When no petition to review or to reverse or modify has been filed by either party within the time allowed therefor, or the petition has been denied, the decision or order of the State Bar Court shall be final and enforceable. In any case in which a petition to review or to reverse or modify is filed by either party within the time allowed therefor, the Supreme Court shall make such order as it may deem proper in the circumstances. Nothing in this subdivision abrogates the Supreme Court's authority, on its own motion, to review de novo the decision or order of the State Bar Court." (§ 6084, subd. (a).)
We have adopted rules of court implementing these statutes. A petition for review of a State Bar Court decision recommending disbarment or suspension must be filed within 60 days after the filing in this court of a certified copy of the decision. (Rule 952(a).) Unless otherwise ordered, if no such petition is filed, "the recommendations of the State Bar Court shall be filed as an order of the Supreme Court following the expiration of the time for filing a timely petition...." (Rule 953(b).) Rule 954(a) sets forth the circumstances in which we will grant review: "The Supreme Court will order review of a decision of the State Bar Court recommending disbarment or suspension from practice when it appears (1) necessary to settle important questions of law; (2) the State Bar Court has acted without or in excess of jurisdiction; (3) petitioner did not receive a fair hearing; (4) the decision is not supported by the weight of the evidence; or (5) the recommended discipline is not appropriate in light of the record as a whole." Rule 954(b) specifies the consequences of an order denying a petition for review: "Denial of review of a decision of the State Bar Court shall constitute a final judicial determination on the merits and the recommendation of the State Bar Court shall be filed as an order of the Supreme Court."
Before the adoption of rule 954 in 1991, as a matter of policy we ordinarily granted petitions for review of recommendations of disbarment or suspension, and issued written opinions following briefing and oral argument. (See In re Attorney Discipline System, supra, 19 Cal.4th at p. 612, 79 Cal.Rptr.2d 836, 967 P.2d 49.) In addition, we occasionally reviewed and modified the *306 recommended discipline, without a petition having been filed. (Ibid.) Under the present scheme, we expressly retain the authority both to grant review of any petition and to review any disciplinary recommendation on our own motion. (§ 6084, subd. (a); rule 951(g).)

III
Petitioner challenges the validity of the procedural scheme for review of State Bar Court decisions on the ground that it impermissibly authorizes this court to summarily deny a petition for review of a State Bar Court decision recommending disbarment or suspension. According to petitioner, our denial of such a petition  without hearing oral argument and issuing a decision explaining the reasons for our denial of review  deprives an attorney of the constitutional right to a judicial determination of whether he or she should be disbarred or suspended. Petitioner claims that a summary denial of review violates article VI, section 14, which provides that decisions of this court that determine causes shall be in writing with reasons stated. He also asserts that article VI, section 2, confers a right to oral argument in this context. Petitioner further contends that the procedural scheme violates his right to de novo review, by an article VI court, of the State Bar Court's determination of questions of law and fact. As we shall explain, we conclude that petitioner's contentions are without merit.

A
Article VI, section 1, states in part: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, and municipal courts." Petitioner correctly observes that the State Bar Court is not an article VI court. He implies, and amicus curiae contends, that the State Bar Act attempts to invest the State Bar Court with judicial power by rendering its decisions final upon our denial of a petition for review. (See § 6084, subd. (a).) Petitioner and amicus curiae overlook the circumstance that only this court renders decisions or orders imposing discipline.
As explained above, the State Bar Act expressly recognizes and reserves to this court the judicial power over attorney discipline. (§ 6087.) Because the State Bar Court is simply an administrative arm of this court and exercises none of our inherent authority over attorney discipline, "`the judicial power in disciplinary matters remains with this court, and was not delegated to the State Bar.' [Citation.]" (In re Attorney Discipline System, supra, 19 Cal.4th at pp. 599-600, 79 Cal.Rptr.2d 836, 967 P.2d 49.) An observation we made 70 years ago remains accurate today: "[A]ny decision which the [State Bar Court] may be empowered or minded to make in a proceeding pending before it is merely recommendatory in character and has no other or further finality in effecting the disbarment, suspension or discipline.... [The State Bar Court] created under the provisions of the act [has] not thereby been invested with any powers which can be said to possess the finality and effect of judicial orders...." (In re Shattuck, supra, 208 Cal. at p. 12, 279 P. 998.) Accordingly, rule 954(b) specifies that the State Bar Court's recommendation of disbarment or suspension shall be filed as an order of this court upon our denial of a petition to review the State Bar Court decision. Contrary to the contention of amicus curiae, our denial of review does not render the State Bar Court's decision "final," because such a decision simply constitutes a recommendation regarding the ultimate discipline to be imposed by this court, and no disbarment or suspension may occur until this court's entry of its own order.[7]
*307 Statutory provisions for our review of State Bar Court decisions reflect a legislative acknowledgment that we exercise original jurisdiction over disciplinary proceedings, and that the State Bar's determinations are advisory only. (Brotsky v. State Bar, supra, 57 Cal.2d at p. 301, 19 Cal.Rptr. 153, 368 P.2d 697.) Because the State Bar is subject to our expressly reserved, primary and inherent regulatory authority over attorney discipline, we properly may utilize the State Bar Court to conduct the preliminary investigation, hearing, and determination of complaints. (In re Attorney Discipline System, supra, 19 Cal.4th at pp. 592-593, 601-603, 79 Cal. Rptr.2d 836, 967 P.2d 49.)
Contrary to petitioner's assertion, the circumstance that we may summarily deny a petition for review of a State Bar Court decision does not mean that an attorney is deprived of the right to a judicial determination of whether the law and facts warrant the recommended discipline. As the Legislature has recognized, State Bar Court decisions are reviewed "in accordance with the procedure prescribed by the California Supreme Court." (§ 6082.) We have specified that an attorney may petition for review of a State Bar Court decision recommending disbarment or suspension (rule 952(a)), and that we will order review if, among other things, the petitioner did not receive a fair hearing, the decision is not supported by the weight of the evidence, or the recommended discipline is not appropriate in light of the record (rule 954(a)). Our denial of review of such a decision "shall constitute a final judicial determination on the merits...." (Rule 954(b).) Therefore, in deciding whether to grant a petition for review pursuant to rule 954(a), we undertake a judicial determination whether the attorney should be disciplined as recommended by the State Bar Court.
As established in part II, ante, the State Bar Court and attorney disciplinary proceedings are sui generis and not necessarily governed by procedures applicable to ordinary civil and criminal litigation. In assessing whether particular procedures extend to attorney disciplinary matters, we often are guided, but not bound, by the law applicable in analogous contexts, including ordinary administrative and quasi-judicial proceedings. To evaluate further petitioner's claim that our summary denial of his petition for review would deprive him of a judicial determination regarding the appropriate discipline, we examine a number of state and federal decisions that have considered the effect of an order by this court summarily denying review of State Bar recommendations, as well as administrative or quasi-judicial determinations. Although no case has considered the precise question presented here, the following authorities support the conclusion that our summary denial of a petition for review pursuant to rule 954(a) constitutes a final judicial decision on the merits.
In Konigsberg v. State Bar of California (1957) 353 U.S. 252, 253-258, 77 S.Ct. 722, 1 L.Ed.2d 810, the United States Supreme Court considered whether it had jurisdiction over federal constitutional claims asserted by an applicant who unsuccessfully had sought this court's review of the State Bar's decision not to certify him to practice law. The high court concluded that our denial, without opinion, of the applicant's petition for review indicated that we had considered the merits of the applicant's federal claims. The Konigsberg decision observes: "In considering actions of the Committee of Bar Examiners the California Supreme Court exercises original jurisdiction and is not restricted to the limited review made by an appellate court." (Id. at p. 254, 77 S.Ct. 722.) As support for this conclusion, the high court cited In re Lacey (1938) 11 Cal.2d 699, 701, 81 P.2d 935, which states: "The recommendation of the [State Bar] is advisory only.... [T]he final determination ... rests with this court, and its powers in that *308 regard are plenary and its judgment conclusive. [Citations.]" As explained above, we exercise the same authority in reviewing the State Bar's disciplinary recommendations. "This court's original jurisdiction over disciplinary proceedings is not limited in any manner. For example, the court exercises its independent judgment as to the weight and sufficiency of the evidence and as to the discipline to be imposed. [Citation.]" (Hustedt v. Workers' Comp. Appeals Bd. (1981) 30 Cal.3d 329, 339, 178 Cal.Rptr. 801, 636 P.2d 1139; see In re Brown (1995) 12 Cal.4th 205, 215, 48 Cal. Rptr.2d 29, 906 P.2d 1184 [a case in which we reviewed on our own motion whether the State Bar's public reproval of an attorney was adequate discipline]; In re Morse (1995) 11 Cal.4th 184, 198-199, 205, 44 Cal.Rptr.2d 620, 900 P.2d 1170 [where, in granting an attorney's petition for review filed pursuant to rule 952(a), we considered on our own motion whether the recommended discipline should be increased].)
The conclusion in Konigsberg that we considered claims raised in the applicant's petition for review, even when we summarily denied the petition, is consistent with the United States Supreme Court's previous holding that, if a petition for writ of review in this court is the exclusive means of obtaining review of a quasi-judicial decision, our summary denial of such a petition is deemed a final judicial determination on the merits. In Napa Valley Co. v. R.R. Com. (1920) 251 U.S. 366, 40 S.Ct. 174, 64 L.Ed. 310 (Napa Valley), the high court concluded that our summary denial of a petition for review of a decision by the Railroad Commission (now known as the Public Utilities Commission, or PUC) was an adjudication on the merits for purposes of res judicata. The PUC is a nonjudicial agency empowered to conduct hearings and render decisions regarding matters such as utility rates. (Cal. Const., art. XII, § 6; see Pub. Util.Code, §§ 1701-1736 [specifying hearing procedures].) The Legislature is authorized to establish the manner and scope of review of PUC decisions (Cal. Const., art. XII, § 5), and until recently the sole means of review was a petition for writ of review in this court. (Stats.1951, ch. 764, § 1756, p. 2090; see Pub. Util.Code, § 1756, subd. (a) [authorizing a petition for writ of review in the Court of Appeal or the Supreme Court].)
We have summarized the Napa Valley decision as follows: "It was contended that since no writ of review had issued, the court `instead of hearing, refused to hear, instead of adjudicating, refused to adjudicate, and that from this negation of action or decision there cannot be an assertion of action or decision with the estopping force of res judicata ...'. The opinion rejected this contention and held that the order of denial was the exercise of the judicial power of the court. By this decision, the United States Supreme Court affirmed the judgment of the District Court [citation], wherein that court said: [¶] `... We are bound to assume ... that the petition put that court in full and complete possession of all the facts upon which [the plaintiff] relies here ...; and that being true, the denial of the petition was necessarily a final judicial determination ... [that] is as effectual as an estoppel as would have been a formal judgment upon issues of fact.... Nor is it material that the reasons [given] for the conclusion reached by the court are not given.'" (Geibel v. State Bar (1939) 14 Cal.2d 144, 148, 93 P.2d 97.) The Napa Valley decision further stated: "[T]he absence of an opinion by the Supreme Court did not affect the quality of its decision or detract from its efficacy as a judgment upon the questions presented...." (Napa Valley, supra, 251 U.S. at p. 373, 40 S.Ct. 174.)
In Geibel v. State Bar, supra, 14 Cal.2d 144, 93 P.2d 97, we considered the effect of our denial of an attorney's petition to set aside our earlier final decision suspending him from the practice of law. After we had summarily denied that petition by minute order, the attorney filed a motion seeking to set aside the decision on the same grounds asserted in the earlier *309 petition. Relying upon Napa Valley, we held that the order denying the petition was res judicata, even though no written opinion had been filed. (Id. at pp. 146-149, 93 P.2d 97.) In a subsequent decision, we explained the rationale of the Napa Valley and Geibel decisions: "[In Napa Valley,] the application was for review of an order of the Railroad Commission, over whose orders this court has exclusive power of review [citations] ... [citations].... [I]t was held that this court's denial without written opinion of an application to review an order of the Railroad Commission constituted a determination on the merits of the questions presented by the application. In Geibel v. State Bar [, supra,] 14 Cal.2d 144 [93 P.2d 97], this court's denial without written opinion of a petition to set aside a previous decision rendered by it was held to render res judicata the issues on a subsequent motion, made on the same grounds as the earlier petition, to vacate and set aside the same decision. There, again, however, this court was the sole tribunal available in the premises, and our denial of the earlier petition necessarily included a determination of the merits thereof." (Funeral Dir. Assn. v. Bd. Of Funeral Dirs. (1943) 22 Cal.2d 104, 107-108, 136 P.2d 785, italics omitted.) We observed that the effect of our denial of a petition for writ of review in such circumstances is distinct from the consequences of a summary denial of a petition for writ of mandate or prohibition. An order summarily denying a petition for writ of mandate or prohibition generally reflects a discretionary refusal to exercise original jurisdiction over a matter that properly may be pursued in the lower courts. (Id. at p. 110, 136 P.2d 785.) When the sole means of review is a petition in this court, however, our denial of the petition  with or without an opinion  reflects a judicial determination on the merits.
Our more recent decisions adhere to this reasoning. Thus, in Consumers Lobby Against Monopolies v. Public Utilities Com. (1979) 25 Cal.3d 891, 160 Cal.Rptr. 124, 603 P.2d 41 (Consumers Lobby), we stated: "The sole means provided by law for judicial review of a[PUC] decision is a petition to this court for writ of review [citation], which thereby serves in effect the office of an appeal. If our ruling on such a petition were not a final `decision on the merits both as to the law and the facts presented,' the parties would be denied their right to such review." (Id. at p. 901, 160 Cal.Rptr. 124, 603 P.2d 41; cf. Dash, Inc. v. Alcoholic Beverage Control Appeals Bd. (9th Cir.1982) 683 F.2d 1229, 1235 ["[Petitions for writ of review of an administrative determination constitute review as of right, and even a summary denial of such a petition represents a judgment on the merits for res judicata purposes in California state courts. [Citation.]" (Fns.omitted.) ].) We further explained: "This reasoning distinguishes the cases involving the prerogative writs such as prohibition and mandate. Because the law does provide other means of judicial review in such cases, appellate courts have discretion to summarily deny petitions for those writs on policy grounds unrelated to their procedural or substantive merits." (Consumers Lobby, supra, 25 Cal.3d at p. 901, fn. 3, 160 Cal.Rptr. 124, 603 P.2d 41; see also Kowis v. Howard (1992) 3 Cal.4th 888, 897 & fn. 2, 12 Cal.Rptr.2d 728, 838 P.2d 250 [distinguishing our orders in PUC matters from rulings summarily denying a petition for writ of mandate or prohibition]; cf. Powers v. City of Richmond (1995) 10 Cal.4th 85, 114, 40 Cal. Rptr.2d 839, 893 P.2d 1160 (plur.opn.) [noting that where writ review is the exclusive means of appellate review of a final order or judgment of the superior court, an appellate court may not deny an apparently meritorious petition].)[8]
*310 These decisions confirm that, because this court has exclusive original jurisdiction to discipline attorneys, and the sole means of obtaining review of State Bar Court disciplinary recommendations is by a petition for review filed in this court, our summary denial of such a petition amounts to an exercise of our jurisdiction and a judicial determination on the merits. This conclusion is supported further by federal decisions holding that the opportunity to file a petition for writ of review of State Bar disciplinary decisions, as well as administrative and quasi-judicial decisions, provides an adequate means of litigating federal claims in state courts.
Federal courts generally are required to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. Abstention is proper, however, only if the plaintiff has an adequate opportunity to litigate federal claims in the state proceedings. (Middlesex Ethics Comm. v. Garden State Bar Assn. (1982) 457 U.S. 423, 432-437, 102 S.Ct. 2515, 73 L.Ed.2d 116 [abstention in favor of a pending attorney disciplinary proceeding].) In Hirsch v. Justices of Supreme Court of California (9th Cir.1995) 67 F.3d 708, several attorneys filed actions in federal court to enjoin disciplinary proceedings pending against them in the State Bar Court. They claimed that the disciplinary system deprived them of various federal constitutional rights. The district court dismissed the action on abstention grounds. On appeal, the attorneys contended that they had no adequate opportunity to present their federal constitutional claims in state court, because this court's judicial review of State Bar Court decisions is "wholly discretionary." The Ninth Circuit Court of Appeals rejected this contention: "The fact that review is discretionary does not bar presentation of appellants' federal claims  appellants can raise the claims in a petition for review. [Citations.] [¶] ... Refusing to abstain would require presuming that the California Supreme Court will not adequately safeguard federal constitutional rights, a presumption the U.S. Supreme Court squarely rejected in Middlesex, 457 U.S. at 431 [102 S.Ct. 2515]. . . ." (Hirsch, supra, 67 F.3d at p. 713; accord, Fieger v. Thomas (6th Cir.1996) 74 F.3d 740, 748-750 [Michigan Supreme Court's discretionary review of disciplinary decisions rendered by that court's Attorney Grievance Commission provides an adequate opportunity to present federal claims in state court]; see also D.C. Court of Appeals v. Feldman (1983) 460 U.S. 462, 479-481, 103 S.Ct. 1303, 75 L.Ed.2d 206 [The court of appeals' per curiam order summarily denying a petition for admission to the bar constituted a judicial determination of the legal and factual issues presented]; Craig v. State Bar of California (9th Cir.1998) 141 F.3d 1353, 1355, fn. 3 [The circumstance that we denied, without comment, a petition for review of the State Bar's recommendation to deny admission "does not mean that no adjudication occurred."]; Fresh Intern, v. Agricultural Labor Relations Bd. (9th Cir.1986) 805 F.2d 1353, 1362 [California Court of Appeal's discretionary review of orders of the Agricultural Labor Relations Board provides an adequate opportunity to present federal claims]; Communications Telesystems v. California Public (N.D.Cal. 1998) 14 F.Supp.2d 1165, 1173 [Our summary denial of a petition for review of a *311 PUC decision did not preclude a litigant from having "an adequate opportunity to judicially raise its federal claims, even if it was not afforded the benefit of oral argument and a written decision."].) Thus, the federal courts have concluded that a summary denial of review in these circumstances does not signify that the court has failed to evaluate and adjudicate the merits of the petition.
In a claim related to his assertion that our summary denial of review would deprive him of a judicial determination regarding the appropriate discipline, petitioner contends that, because the judges of the State Bar Court are appointed periodically by this court (§ 6079.1; rule 961), they lack the judicial independence necessary to render such determinations. Petitioner relies upon Northern Pipeline Co. v. Marathon Pipe Line Co. (1982) 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, which held that Congress improperly had delegated judicial power to federal bankruptcy court judges, who were subject to periodic appointment by the President. The high court's decision, however, was based upon the circumstance that the bankruptcy judges improperly were empowered to exercise all of the ordinary judicial powers of courts established by article III of the United States Constitution, including the power to issue final judgments that were binding and enforceable even in the absence of an appeal. (458 U.S. at pp. 76-87, 102 S.Ct. 2858.) By contrast, the State Bar Court exercises no judicial power, but rather conducts specialized hearings before making nonbinding recommendations to this court, which then makes an independent judicial determination. The broad powers conferred upon the bankruptcy court judges considered in Northern Pipeline bear slight resemblance to the authority of State Bar Court judges, and our delegation of investigative and quasi-judicial tasks to the State Bar is appropriate. (Cf. People v. Hayne (1890) 83 Cal. 111, 121-122, 23 P. 1 [Commissioners appointed by this court to examine briefs and the record, and to report to the court their opinions, exercise no judicial power, but rather act as auxiliary to the court in ascertaining certain facts and law necessary to the judgment].)
In sum, our denial of a petition for review of a State Bar Court disciplinary decision is a final judicial determination on the merits for purposes of establishing federal jurisdiction and res judicata. Furthermore, the circumstance that we may summarily deny such a petition does not preclude an attorney from having an adequate opportunity to litigate federal claims in this court. Thus, we need not hear oral argument or provide a statement of reasons in order to undertake a judicial determination of the claims asserted in the petition. The procedural scheme for our review of State Bar Court decisions does not invest the State Bar Court with judicial power, nor does it deprive an attorney of the right to an independent determination, by an article VI court, of whether he or she should be disbarred or suspended.

B
We also reject petitioner's contention that article VI confers a right to a written opinion and oral argument when an attorney petitions for review of a State Bar Court decision recommending disbarment or suspension. Article VI, section 14, states in part: "Decisions of the Supreme Court ... that determine causes shall be in writing with reasons stated." Petitioner asserts that, if our denial of a petition for review is a judicial determination on the merits, the denial order deprives an attorney of an important right and thus decides a cause within the meaning of this constitutional provision. Although the term "cause" is not susceptible to precise definition, we conclude that our denial of a petition for review of the State Bar Court's recommendation of disbarment or suspension does not decide a cause within the meaning of this constitutional provision, and that the order denying such a petition need not include a *312 written opinion explaining the reasons for the ruling.
The written-decision requirement first appeared in article VI, section 2 of the California Constitution of 1879, which stated in part: "In the determination of causes, all decisions of the [Supreme] court ... shall be given in writing, and the grounds of the decision shall be stated." This section also divided this court into two departments, each empowered to render decisions. To prevent conflicts of authority from arising between the departments, the provision stated that the Chief Justice could "order any cause pending before the court to be heard and decided by the court in bank." (Ibid.) After the creation of the Courts of Appeal, article VI, section 4 of the Constitution of 1904 similarly authorized this court "to order any cause pending before a district court of appeal to be heard and determined by the supreme court." We subsequently construed the term "cause" as used in the latter provision to include bar admission matters pending in the Court of Appeal.[9]
In In re Wells (1917) 174 Cal. 467,163 P. 657, the Court of Appeal had dismissed the petition of a local bar association to revoke that court's previous order admitting an attorney to the practice of law. We ordered the matter to be heard and determined by this court. Our decision rejected the attorney's contention that we lacked jurisdiction, and concluded that the proceeding was a cause within the meaning of article VI, section 4 of the Constitution of 1904, authorizing transfer of causes pending in the Court of Appeal. In discussing the origins of that provision, we made the following observations regarding the clause in article VI, section 2 of the Constitution of 1879, allowing transfer between departments of this court: "This provision has always been understood to apply to all cases, matters, and proceedings of every description. It has been the unvarying custom of the court in Bank to entertain an application for rehearing of any matter decided in department, regardless of its nature or character. The rule has been applied in original proceedings of all kinds, in motions to dismiss appeals and other matters, as well as in ordinary cases on appeal. The word `cause,' in the clause above quoted, was understood to be broad enough to include everything that could possibly come before the department for decision." (174 Cal. at pp. 471-472, 163 P. 657.) Because the provision in article VI, former section 4, also had authorized transfer from the Courts of Appeal to this court for the purpose of avoiding conflicts of authority, we determined that the term "cause" in that section should be construed similarly. Accordingly, a cause was held "to include every matter decided by a district court of appeal, and operating as a final decision or disposition thereof in that court," including a decision whether to revoke an attorney's admission on the ground it was obtained fraudulently. (174 Cal. at p. 473, 163 P. 657.) "Such a decision may determine important rights of the parties in the particular case, and may also establish important principles and rules of law and practice applicable generally. The same necessity that the law of the state should be harmonious and uniform exists with respect to such matters as with regard to any other branch of the law." (Ibid.)
We adhered to this broad construction of the term "cause" in a subsequent admission proceeding that we transferred to this court from the Court of Appeal. (In re Stevens (1925) 197 Cal. 408, 413-414, 241 P. 88.) In Brydonjack v. State Bar (1929) 208 Cal. 439, 281 P. 1018  decided after the adoption of the State Bar Act  we considered a petition for writ of review of the State Bar's recommendation not to admit an applicant. Our decision declined to address a question raised concerning the "effectiveness" of a writ of review in the matter, stating: "[I]t is our view ... *313 that a motion, oral or written, if entertained, would be sufficient to bring before us for consideration the application of any person who claims to have met all the prescribed tests for admission.... Such a motion constitutes the proceeding a cause pending in this court." (Id. at p. 447, 281 P. 1018, citing In re Stevens, supra, 197 Cal. 408, 241 P. 88.) This passage effectively defines the term "cause" to include any matter coming before the court for consideration. Our decision in Brydonjack, however, had no occasion to construe that term as used in any particular constitutional provision.
The foregoing decisions establish that we broadly have defined the term "cause" in connection with the constitutional provision permitting transfer of matters from the Courts of Appeal to this court, and that we are empowered to transfer "all cases, matters, and proceedings of every description" in order to consider them. (In re Wells, supra, 174 Cal. at p. 471, 163 P. 657.) Our previous construction of the term "cause" in connection with the written-decision requirement, however, has been narrower. For example, in Metropolitan Water Dist. v. Adams (1942) 19 Cal.2d 463, 122 P.2d 257, we rejected a contention that we must issue a written decision before granting a petition for rehearing. Our opinion states: "When not conducting an open session, the court is convened in executive sessions at least two times each week. At these sessions numerous matters are ruled upon, such as applications for writs, petitions for transfer from the District Courts of Appeal, and petitions for rehearing of our own decisions. These matters are disposed of by order of at least four members of the court, but no oral argument thereon is provided for by the Constitution or otherwise permitted, and no grounds for the rulings are stated in writing, except in very rare cases in the discretion of the court." (Id. at p. 468, 122 P.2d 257.) Similarly, in Funeral Dir. Assn. v. Bd. of Funeral Dirs., supra, 22 Cal.2d 104, 136 P.2d 785, we held that an order issuing or declining to issue a prerogative writ on an ex parte application does not constitute the determination of a cause requiring a written decision. As we explained: "It is only after an alternative writ has been issued that the matter becomes a `cause,' the determination of which, i.e., the granting or denying of a peremptory writ, requires a written decision." (Id. at p. 106, 136 P.2d 785.)
These examples of matters we have deemed not to be causes within the meaning of the written-decision provision nevertheless are matters that come before the court for determination. Thus, these matters would be considered causes in connection with the provision permitting transfer from the Courts of Appeal. This distinction reflects an effort to construe the term "cause" in conformance with the goals of the constitutional provisions. To ensure uniformity in the law and efficient allocation of judicial resources, the word "cause" is broadly interpreted to permit the greatest flexibility in transferring matters to this court from the lower appellate courts. As explained in Metropolitan Water Dist. v. Adams, supra, 19 Cal.2d 463, 122 P.2d 257, and Funeral Dir. Assn. v. Bd. of Funeral Dirs., supra, 22 Cal.2d 104, 136 P.2d 785, however, not every matter coming before the court for a ruling requires an opinion. For example, some rulings  such as orders denying petitions for review in ordinary civil and criminal cases  have no precedential value, and providing a statement of reasons for the ruling would impose an undue burden upon the court while offering little benefit to the public or the affected individuals. Thus, because the constitutional provision for transfer of causes has a purpose different from that underlying the written-decision provision, the scope of the term "cause" in each of these provisions has been analyzed independently. Therefore, our previous determination that attorney admission proceedings are causes that may be transferred from the Courts of Appeal *314 does not establish that admission and disciplinary proceedings are causes within the meaning of article VI, section 14.
Not only our prior decisions, but past and present practice as well, indicate that we do not consider all attorney admission and disciplinary matters to be causes requiring a written decision. Long ago we ceased issuing written opinions whenever an applicant sought review after failing to pass the bar examination. (In re Admission to Practice Law (1934) 1 Cal.2d 61, 64, 33 P.2d 829.) Nor have we issued a written decision upon our denial of a petition for review of a State Bar recommendation of private or public reproval. (See Alberton v. State Bar (1987) 43 Cal.3d 638, 642, 238 Cal.Rptr. 374, 738 P.2d 720.) Indeed, under the present rules, as was true under the previous procedural scheme, if an attorney does not petition for review of a State Bar Court decision recommending disbarment or suspension, we may review the matter on our own motion, but unless we issue a writ of review, we file the order that is required for imposition of the discipline recommended by the bar. In this situation, we still exercise our jurisdiction over attorney discipline and it is our order that implements the disciplinary recommendation, yet petitioner does not suggest that our entry of such an order determines a cause or requires a written opinion. Therefore, not every matter presented to the court for a ruling  including a matter involving attorney admission or discipline  is a cause that requires a written decision.
Nothing in the debates regarding the written-decision requirement in article VI, section 2, of the Constitution of 1879 suggests that the term "cause" was intended to extend to attorney admission and disciplinary proceedings. (2 Willis & Stockton Debates and Proceedings, Cal. Const. Convention 1878-1879, pp. 950-951; 3 Debates and Proceedings, supra, pp. 1455-1456.) The generally understood legal meaning of that term also supports the conclusion that such matters are not causes. The word "cause" is a synonym for "`a proceeding in court, a suit, or action.'" (Hohn v. United States (1998) 524 U.S. 236, 241, 118 S.Ct. 1969, 1972, 141 L.Ed.2d 242, 252; Painter v. Berglund (1939) 31 Cal.App.2d 63, 70, 87 P.2d 360; see Black's Law Diet. (6th ed.1990) p. 221.)[10] "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc, § 22.) The term "action" has the same meaning as "suit." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 11, p. 64.) "Every other remedy is a special proceeding." (Code Civ. Proc, § 23.) Special proceedings are established by statute and generally afford rights and remedies unknown to the common law. (3 Witkin, Cal. Procedure, supra, Actions, § 13, p. 66.)
A petition for review of a State Bar Court recommendation regarding admission or discipline does not fall within any of these definitions. Like the proceeding in the State Bar Court, it is sui generis  the procedures governing ordinary civil and criminal proceedings do not necessarily apply. (See Fitzsimmons v. State Bar (1983) 34 Cal.3d 327, 332-333, 193 Cal.Rptr. 896, 667 P.2d 700; Yokozeki v. State Bar, supra, 11 Cal.3d at p. 447, 113 Cal.Rptr. 602, 521 P.2d 858.) The power to admit and discipline attorneys is an inherent and exclusive judicial function. Members of the bar are officers of the court, subject to our primary regulatory power. (In re Attorney Discipline System, supra, 19 Cal.4th at pp. 592-593, 79 Cal.Rptr.2d 836, 967 P.2d 49; Hustedt v. Workers' Comp. Appeals Bd., supra, 30 Cal.3d at pp. 336-337, 178 Cal.Rptr. 801, 636 P.2d 1139.) In admitting and disciplining *315 attorneys, neither this court nor the State Bar acts as a prosecuting "party" in an "ordinary proceeding" within the meaning of the statute defining an "action." (Code Civ. Proc, § 22.) The State Bar serves as an adjunct to this court, and we exercise the inherent judicial function of determining whether, and under what conditions, an attorney will act as an officer of the court. (Cf. In re Buckley (1973) 10 Cal.3d 237, 247-249, 258-259, 110 Cal. Rptr. 121, 514 P.2d 1201 [a court has inherent power summarily to adjudge an attorney in direct contempt of court, subject only to review by writ of certiorari or habeas corpus].) Nor is an admission or disciplinary matter a special proceeding created by statute. (Code Civ. Proc, § 23.) The State Bar Act established no new proceeding or remedy, but rather recognized expressly that this court retains all disciplinary authority that the court had prior to the passage of the act. (In re Attorney Discipline System, supra, 19 Cal.4th at p. 598, 79 Cal.Rptr.2d 836, 967 P.2d 49.)
Furthermore, our determination of attorney disciplinary matters does not implicate our appellate jurisdiction. Witkin characterizes our consideration of State Bar disciplinary recommendations as follows: "This unique proceeding in review differs from an ordinary appeal and from review by writ of certiorari. The court does not affirm, reverse, or annul the judgment or order of a lower tribunal, and the findings of fact of the State Bar Court are not binding. The court examines the entire record, weighs the evidence, and makes an independent determination and order imposing discipline or dismissing the proceeding. [Citations.]" (1 Witkin, Cal. Procedure, supra, Attorneys, § 680, p. 794.)
In other situations in which our summary denial of review necessarily reflects a decision on the merits, we never have suggested that such a ruling decides a "cause," requiring a written opinion. For example, we have recognized that an order denying, without opinion, a petition for writ of review of a PUC decision is a determination on the merits. (Consumers Lobby, supra, 25 Cal.3d at pp. 900-901, 160 Cal.Rptr. 124, 603 P.2d 41.) Similarly, petitions for review of Agricultural Labor Relations Board decisions may be summarily denied without opinion, even though such determinations are on the merits. (Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd. (1979) 24 Cal.3d 335, 350-351,156 Cal.Rptr. 1, 595 P.2d 579; Agricultural Labor Relations Bd. v. Abatti Produce, Inc. (1985) 168 Cal. App.3d 504, 512, 214 Cal.Rptr. 283, disapproved on another point in Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc. (1987) 43 Cal.3d 696, 705, 238 Cal.Rptr. 780, 739 P.2d 140.)[11]
*316 In short, unless we choose to issue a writ of review, an attorney disciplinary matter does not fall within the generally recognized legal meaning of the term "cause." Our resolution of such a matter is an exercise of our inherent judicial power over disciplinary proceedings, and thus our order summarily denying a petition for review of the disciplinary recommendation of the State Bar Court does not determine a cause within the meaning of article VI, section 14, requiring that such determinations be in writing with reasons stated.
Nor does article VI require oral argument, as petitioner maintains. Article VI, section 2, provides in relevant part: "Concurrence of 4 judges present at the argument is necessary for a judgment" by the Supreme Court. Assuming that a ruling denying a petition for review of a State Bar Court decision is a judgment within the meaning of article VI, section 2, we determine that this constitutional provision does not confer a right to oral argument in this context. We recently explained that article VI, section 2, requires the concurrence of four justices "present at the argument" in those circumstances where the court does hear oral argument  for example, in conjunction with an appeal or after the issuance of an alternative writ. (Lewis v. Superior Court (1999) 19 Cal.4th 1232, 1253-1257, 82 Cal. Rptr.2d 85, 970 P.2d 872.) Where, as in the present case, governing decisions, statutes, and rules do not contemplate oral argument, the constitutional provision does not confer such a right independently. (Id. at p. 1257, 82 Cal.Rptr.2d 85, 970 P.2d 872.) In other proceedings in which a petition for review in an appellate court provides the sole means for judicial consideration of a quasi-judicial agency's decision, we have determined that the petition may be summarily denied on the merits, without oral argument. (E.g., Tex-Cal Land Management Inc. v. Agricultural Labor Relations Bd., supra, 24 Cal.3d at pp. 350-351, 156 Cal.Rptr. 1, 595 P.2d 579 [decisions of the Agricultural Labor Relations Board].)
Petitioner contends that even if article VI provides no right to a written decision or oral argument in this context, our summary denial of a petition for review of a State Bar Court disciplinary recommendation conflicts with section 6082's provision that an attorney may have the State Bar Court's action "reviewed by the California Supreme Court or by a California Court of Appeal...." The statute expressly states, however, that the State Bar Court's action may be reviewed "in accordance with the procedure prescribed by the California Supreme Court." (Ibid.) Our procedures do not provide for a written opinion or oral argument in this context. In any event, in light of our previous conclusion that a summary denial of a petition for review of a State Bar Court disciplinary recommendation constitutes a judicial determination on the merits by this court, we reject petitioner's contention. Nothing in section 6082 or in any other provision suggests that the term "review" was intended to include oral argument and a written opinion, as petitioner asserts. Even if we summarily deny a petition for review, we independently examine the findings and conclusions of the State Bar Court in light of the entire record. (See In re Shattuck, supra, 208 Cal. at pp. 8-9, 279 P. 998 [the term "review" as used in the State Bar Act contemplates a reexamination of the entire record].) Thus, contrary to petitioner's *317 claim, we afford de novo review of questions of fact and law when an attorney petitions for review of a State Bar Court recommendation of disbarment or suspension.
We conclude that even though our summary denial of a petition for review filed pursuant to rule 952 is a judicial determination on the merits  including an independent review of questions of fact and law  it is not the decision of a cause within the meaning of article VI, section 14. Therefore, we need not issue a written decision when issuing such a denial order. We further conclude that article VI, section 2, does not confer a right to oral argument in this context.

IV
Petitioner asserts that our summary denial of a petition for review of a State Bar Court decision fails to afford an attorney the procedural due process guaranteed by the United States Constitution, because the attorney receives no indication "that the merits have ever been considered by judicial minds." As we have explained, however, our summary denial of such a petition for review necessarily includes a judicial determination on the merits (rule 954(b)), including an independent evaluation of the facts and the law. Thus, to the extent petitioner's contention rests upon the mistaken assumption that we do not consider the merits of the petition before issuing a ruling, the contention fails.
In any event, the absence of a written opinion and of an opportunity for oral argument does not deprive an attorney of due process of law. The constitutional validity of a procedural scheme depends upon a balancing of the private interest affected by the official action, the government's interest, and the risk of an erroneous deprivation of the private interest, including the probable value, if any, of additional or substitute procedural safeguards and the burdens such safeguards would entail. (Mathews v. Eldridge (1976) 424 U.S. 319, 334-335, 96 S.Ct. 893, 47 L.Ed.2d 18; California Teachers Assn. v. State of California (1999) 20 Cal.4th 327, 347, 84 Cal.Rptr.2d 425, 975 P.2d 622.) An attorney "plainly has a property interest in the right to practice his [or her] profession...." (Conway v. State Bar, supra, 47 Cal.3d at p. 1113, 255 Cal.Rptr. 390, 767 P.2d 657.) To the extent the charges against the attorney implicate his or her good name, reputation, honor, or integrity, the attorney has a protected liberty interest as well. (See California Teachers Assn. v. State of California, supra, 20 Cal.4th at p. 348, 84 Cal.Rptr.2d 425, 975 P.2d 622.) The governmental interest at stake is the protection of the public, the courts, and the legal profession from the objectionable activities of individuals unfit to practice law. (Emslie v. State Bar, supra, 11 Cal.3d at p. 225, 113 Cal.Rptr. 175, 520 P.2d 991; Bradpiece v. State Bar (1974) 10 Cal.3d 742, 748, 111 Cal. Rptr. 905, 518 P.2d 337.) Both the private and the governmental interests in this context are strong. Before an attorney may be disbarred or suspended, he or she is entitled to fair notice of the charges and a meaningful opportunity to be heard. (In re Ruffalo (1968) 390 U.S. 544, 550-551, 88 S.Ct. 1222, 20 L.Ed.2d 117; Conway v. State Bar, supra, 47 Cal.3d at p. 1113, 255 Cal.Rptr. 390, 767 P.2d 657.)
Neither petitioner nor amicus curiae contends that the extensive hearing and review procedures in the State Bar Court (pt. II, ante) fail to satisfy the due process requirements of notice and a meaningful opportunity to be heard. Although providing an opportunity for oral argument in this court and issuance of a written opinion would require this court to allocate more time and resources to reviewing a disciplinary recommendation, these additional procedures would do little to minimize the risk of an erroneous result in such matters. As we repeatedly have emphasized, when an attorney petitions for review of a State Bar Court decision recommending *318 disbarment or suspension, we thoroughly review the attorney's contentions and the entire record, and reach an independent determination whether he or she should be disciplined as recommended. We will order review of the State Bar Court's decision whenever it appears that one or more of the grounds enumerated in rule 954(a) are present. The basis for the State Bar Court's recommended discipline is set forth in detail in the decisions of that court's Hearing Department and Review Department, and we have available for our review the attorney's legal and factual contentions presented in the petition. In the context of attorney admission and discipline  where we appropriately rely upon the expertise of the State Bar as our administrative arm, and review its recommendations pursuant to our inherent regulatory power over the practice of law  issuance of our own written opinion once we have determined that the petition does not warrant further review would add little.
Even if the additional procedural safeguards of oral argument and a written opinion had value in these circumstances, such procedures would result in an undue burden upon this court. As we recently explained: "[T]his court has been able to reduce considerably its resources devoted to overseeing the [attorney disciplinary] process, and instead has relied upon the professionalism and consistency generated by the revised process, particularly that achieved by the newly created State Bar Court. This court's continued ability to place substantial reliance on a reliable and professional administrative arm with regard to attorney discipline serves the public's interest by enabling the court to dedicate more of its finite resources to deciding issues of statewide importance in all areas of the law." (In re Attorney Discipline System, supra, 19 Cal.4th at pp. 610-611, 79 Cal.Rptr.2d 836, 967 P.2d 49.) By 1990, before we adopted a policy of discretionary review pursuant to rule 954, we were issuing more than 40 opinions annually in State Bar disciplinary proceedings, and the number was increasing. In several subsequent years, the court's opinion count included no State Bar matters. Thus, our reliance upon the State Bar Court "has been an important factor in this court's ability to handle an ever-burgeoning workload." (19 Cal.4th at p. 613, 79 Cal. Rptr.2d 836, 967 P.2d 49, fn. omitted.) Indeed, during the period from fiscal years 1988-1989 to 1997-1998, the total number of annual filings in this court almost doubled, to more than 8,600. Over the same period, the number of matters in which the State Bar recommended disbarment, suspension, or probation increased from 128 to 413 per year. (Judicial Council of Cal., Ann. Court Statistics Rep. (1999) pp. 6, 9.) In light of the increasing number of matters in which the State Bar recommends disbarment or suspension, a requirement that we hear oral argument and issue written opinions whenever an attorney seeks review of such a recommendation  even after our independent assessment of the State Bar Court's decision and the record convinces us that the recommended discipline should be imposed  would have an adverse impact upon the work of the court and confer little benefit upon the public, the bar, or the disciplined attorney.
Federal decisions also support the conclusion that our disciplinary scheme satisfies due process requirements. "California provides [notice, an opportunity to be heard,] and other protections. It allows the lawyer to call witnesses and cross-examine them. [Citation.] At the hearing, the burden is on the state to establish culpability `by convincing proof and to a reasonable certainty'; `all reasonable doubts must be resolved in favor of the accused.' [Citations.] The California Supreme Court, in deciding whether to accept the bar's recommendation, grants the bar's findings `great weight' but is not bound by them. [Citation.] It must `independently examine the record, reweigh the evidence and pass on the sufficiency.' [Citation.]... [¶] The State of California provides attorneys subject to discipline *319 with more than constitutionally sufficient procedural due process." (Rosenthal v. Justices of the S.Ct. of California (9th Cir.1990) 910 F.2d 561, 564-565, fn. omitted.) Thus, under any measure, the procedural scheme here at issue is constitutionally valid.
Moreover, the contention that we must issue a written opinion to ensure due process of law has been rejected expressly. In Giannini v. Real (9th Cir.1990) 911 F.2d 354, an unsuccessful bar applicant asserted that he was deprived of procedural due process because our decision denying him admission did not include a written opinion and he was afforded no opportunity to be heard or to present to this court any claim or defense. The Ninth Circuit found this assertion unpersuasive: "[The applicant] petitioned the California Supreme Court and had an opportunity to present his claim before the supreme court via the petition. [Citation.] We therefore find that the State provided [the applicant] with procedural due process. [Citation.]" (Id. at p. 357, fn. omitted; see also Dash, Inc. v. Alcoholic Beverage Control Appeals Bd, supra, 683 F.2d at pp. 1233-1235 [Our summary denial of a liquor licensee's petition for review of an administrative decision revoking a license provides a meaningful opportunity for review and satisfies the procedural requirements of the due process clause].)
We conclude, after analyzing and balancing the relevant factors, that the due process clause does not require that we hear oral argument or issue a written opinion before denying an attorney's petition for review of a State Bar Court decision recommending disbarment or suspension.

V
Our order to show cause directed petitioner and the State Bar to address the criteria the court may employ in determining whether to grant a petition for review of a State Bar Court decision recommending disbarment or suspension. The State Bar asserts that in the vast majority of cases, issues warranting review are likely to fall within the categories set forth in rule 954(a). As explained previously, rule 954(a) provides that we will order review of such a decision "when it appears (1) necessary to settle important questions of law; (2) the State Bar Court has acted without or in excess of jurisdiction; (3) petitioner did not receive a fair hearing; (4) the decision is not supported by the weight of the evidence; or (5) the recommended discipline is not appropriate in light of the record as a whole." According to the State Bar, in extraordinary circumstances where an issue warranting review does not meet the criteria specified in the rule, we may exercise our inherent authority to review such a question. (See rule 951(g) ["Nothing in these rules shall be construed as affecting the power of the Supreme Court to exercise its inherent jurisdiction over the lawyer discipline and admissions system."].)
Consistent with his contention that we must grant review whenever the State Bar Court recommends disbarment or suspension, petitioner contends that we must review all questions of law, all mixed questions of law and fact, and  if the attorney objects to the Hearing Department's factual findings  all questions of fact. Petitioner further suggests that we may limit review to issues properly raised in the State Bar Court Review Department, and that we may condition review upon the petitioner's willingness to participate in a judicial settlement conference.
We agree with the State Bar's position that the criteria set forth in rule 954(a) are sufficiently broad to encompass virtually any circumstance in which the issuance of a writ of review would be necessary or appropriate. Furthermore, as the State Bar observes, we retain inherent authority to grant review in any disciplinary matter, notwithstanding the criteria set forth in the rule. In the immediately preceding portion of this opinion, we have rejected petitioner's contention that we must issue a writ of review whenever an attorney *320 seeks review of the State Bar's disciplinary recommendation. As explained above, however, before we summarily deny such a petition for review, we undertake an independent assessment of all questions of law, mixed questions of law and fact, and disputed questions of fact. Regarding petitioner's suggestion that any issue presented for our review first be raised in the State Bar Court Review Department, rule 952(e) already requires that such a petition show that review within the State Bar Court has been exhausted. We have no procedures, and discern no need, for judicial settlement conferences in attorney disciplinary proceedings.
Amicus curiae asserts that we should grant review of all petitions that "provide reasonable documentation to support a prima facie claim" of a due process violation, biased State Bar Court judges, excessive discipline, or violations of published decisions, statutes, and rules. Amicus curiae further contends that, in deciding whether to grant review, we should not evaluate "the quality of the claim" presented in the petition. As discussed above, rule 954(a) already provides that we will review disciplinary proceedings conducted in violation of the law, or which result in recommended discipline that is inappropriate under the circumstances. We reject the further suggestion that we must issue a writ of review whenever an attorney asserts a nonfrivolous claim and alleges facts that, if true, might warrant a reduction in the recommended discipline. Even if an attorney raises an important question of law or presents a prima facie claim of legal or factual error, we properly may deny review if our independent examination of the record and evaluation of the attorney's factual and legal assertions establish that the recommended discipline should be imposed.

VI
Our order to show cause indicated that no issue raised in the petition for review warrants consideration under rule 954(a). No constitutional principle or other legal requirement compels us, notwithstanding that determination, to issue a writ of review, hear oral argument, or render a written opinion. Accordingly, the order to show cause is discharged.[12]
BAXTER, J., WERDEGAR, J., and CHIN, J., concur.
Concurring Opinion by MOSK, J.
I concur in the result.
I do so because I am of the view that the California Constitution's grant to us of "plenary" power (In re Lacey (1938) 11 Cal.2d 699, 701, 81 P.2d 935; see generally In re Attorney Discipline System (1998) 19 Cal.4th 582, 591-607, 79 Cal.Rptr.2d 836, 967 P.2d 49) to regulate attorneys (see Cal. Const., art. VI, §§ 1, 9) displaces any contrary restraint that the state charter would otherwise impose in its requirement that our "[decisions ... that determine causes shall be in writing with reasons stated" (id., art. VI, § 14).
Dissenting Opinion by KENNARD, J.
The majority holds that this court need not hear argument or issue a written opinion when it suspends or revokes an attorney's license to practice law. I disagree.
Under the California Constitution, this court may not render a judgment unless it has given the parties a chance to argue their case to the members of this court. (Cal. Const., art. VI, § 2.) The state Constitution also requires that this court issue a written opinion giving reasons for any decision that determines a "cause[ ]." (Id., art. VI, § 14.) Unlike the majority, I conclude that because an order of this court suspending or disbarring an *321 attorney is a judgment, and because such an order determines a cause, our Constitution requires that this court hear argument and issue a written opinion before entering an attorney suspension or disbarment order.
The majority's decision here produces a startling anomaly: Attorneys are the only persons whose state occupational licenses can be revoked or suspended without a judicial hearing. When the right to continue practicing a trade or profession is at stake, only attorneys are denied their day in court. I would avoid this anomaly by recognizing that the state Constitution's guarantees of oral argument and a written opinion apply in attorney suspension and disbarment proceedings.

I. ORAL ARGUMENT
The California Constitution provides that in the California Supreme Court "[concurrence of 4 judges present at the argument is necessary for a judgment" (Cal. Const., art. VI, § 2, italics added) and that in a Court of Appeal "[concurrence of 2 judges present at the argument is necessary for a judgment" (id., art. VI, § 3, italics added). As I explained in a case this court decided last year, the latter provision confers a right to oral argument, which a litigant may waive, before a Court of Appeal renders a judgment. (Lewis v. Superior Court (1999) 19 Cal.4th 1232, 1270-1271, 82 Cal.Rptr.2d 85, 970 P.2d 872 (dis. opn. of Kennard, J.).)[1] Because these two provisions, one applying to this court and the other to the Courts of Appeal, are part of the same article of the Constitution, were adopted at the same time, are closely related in subject matter, and are worded identically (except for the number of judges required), they should be construed alike. (See Department of Revenue of Ore. v. ACF Industries, Inc. (1994) 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165; American Airlines, Inc. v. County of San Mateo (1996) 12 Cal.4th 1110, 1129, 51 Cal.Rptr.2d 251, 912 P.2d 1198.) Accordingly, I conclude that the state Constitution gives litigants a right to oral argument in the California Supreme Court before this court renders a judgment.
"A judgment is the final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc, § 577.) As the majority concedes, "this court has exclusive original jurisdiction to discipline attorneys" and an attorney suspension and disbarment order "amounts to an exercise of our jurisdiction and a judicial determination on the merits." (Maj. opn., ante, 93 Cal.Rptr.2d at pp. 309-310, 993 P.2d at pp. 966-967.) Thus, an attorney discipline proceeding is a judicial proceeding, and an order of this court suspending or revoking an attorney's license to practice is a judgment because it is the final determination of the attorney's rights in that proceeding.
To summarize: The state Constitution grants litigants a right to oral argument before this court renders a judgment, and an attorney suspension or disbarment order is a judgment rendered by this court; therefore, an attorney has a right under the state Constitution to oral argument before this court suspends or disbars the attorney.

II. WRITTEN OPINION
The California Constitution provides that "[decisions of the Supreme Court and *322 courts of appeal that determine causes shall be in writing with reasons stated." (Cal. Const., art. VI, § 14.) Is an attorney discipline proceeding a "cause[ ]" that is "determine[d]" by an order of suspension or disbarment? If it is, then a decision of this court to grant such an order must be explained in a written opinion.
The majority acknowledges that "cause" means "`"a proceeding in court, a suit or action,"'" but it denies that an attorney discipline proceeding resulting in suspension or disbarment falls within this definition because, the majority insists, these proceedings are sui generis. (Maj. opn., ante, 93 Cal.Rptr.2d at p. 314, 993 P.2d at p. 970.) I disagree. An attorney suspension or disbarment proceeding is a "proceeding in court" because, as the majority explains, it is a proceeding in which this court exercises original jurisdiction (id. at pp. 306-307, 993 P.2d at pp. 963-964) and "renders decisions or orders imposing discipline" (id. at p. 306, 993 P.2d at p. 963).
Deciding that an attorney discipline proceeding falls within the general definition of a cause does not end the inquiry. In interpreting the state Constitution's written opinion provision, this court has held that certain rulings of appellate courts in judicial proceedings do not "determine causes" within the meaning of that provision. (Cal. Const., art. VI, § 14.) Thus, a written opinion is not required before an appellate court grants or denies a petition for rehearing (Metropolitan Water Dist. v. Adams (1942) 19 Cal.2d 463, 468, 122 P.2d 257), dismisses an appeal (People v. Brown (1957) 149 Cal.App.2d 175, 176, 307 P.2d 949), grants or denies an alternative writ (Funeral Dir. Assn. v. Bd. of Funeral Dirs. (1943) 22 Cal.2d 104, 106-107, 136 P.2d 785), or denies a petition for review (Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd. (1979) 24 Cal.3d 335, 350-351, 156 Cal.Rptr. 1, 595 P.2d 579). But the majority does not explain what logic or principle, other than mere custom or convenience, serves to explain when a ruling in a judicial proceeding will or will not trigger our Constitution's written opinion requirement.
Our decisions in this area indicate that a ruling in a judicial proceeding determines a cause for purposes of the written opinion requirement if it is a final rather than an interim ruling and if it produces an enforceable determination of the parties' rights.
Interim rulings do not trigger the written opinion requirement. An appellate court need not issue a written opinion when granting a writ of review, an alternative writ, an order to show cause, or a petition for rehearing, because none of these rulings terminate the proceeding or determine the parties' rights. Rather, in the ordinary course of events, each of these rulings is an intermediate step to be followed by oral argument and a final decision on the merits. It is only at the final stage, when the court enters an order or judgment that determines the parties' rights, that a written opinion is required.
There is another group of rulings that have the effect of terminating a judicial proceeding in an appellate court but nonetheless do not trigger the written opinion requirement. In this category are rulings denying rehearing, dismissing an appeal, or declining to issue a writ of review, alternative writ, or order to show cause. In each instance, the ruling indicates a decision by the appellate court not to intervene and not to disturb an existing order or judgment that is itself enforceable. Thus, when an appellate court denies rehearing following a decision on appeal, the court has decided not to disturb its own previous decision, which it has already explained in a written opinion. In the other instances, such as an order of this court denying review of a Court of Appeal's decision on appeal, the order is not itself enforceable as a judgment; it merely permits enforcement of an order or judgment of another court or administrative agency. This is so even when the appellate court's ruling declining review necessarily reflects *323 a decision on the merits. (See Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd., supra, 24 Cal.3d 335, 350-352, 156 Cal.Rptr. 1, 595 P.2d 579.)
Although the majority insists there is "no legal basis" (maj. opn., ante, 93 Cal. Rptr.2d at p. 315, fn. 11, 993 P.2d at p. 972, fn. 11) for distinguishing this court's orders in attorney suspension and disbarment matters from this court's orders summarily denying original writ petitions or denying review of decisions rendered by the Courts of Appeal or by state administrative agencies such as the Public Utilities Commission, there is a fundamental difference. As the majority stresses, "only this court renders decisions or orders imposing [attorney] discipline" (maj. opn., ante, at p. 306, 993 P.2d at p. 963) and "we exercise original jurisdiction over disciplinary proceedings..." (id. at pp. 306-307, 993 P.2d at pp. at 963-964). This court, acting through the State Bar, assumes the duty of enforcing our attorney discipline orders. When this court undertakes to exercise original jurisdiction in a proceeding, and in so doing makes a final judicial determination of the parties' rights in that proceeding, embodied in an enforceable order, we have necessarily made a decision that determines a cause within the meaning of the state Constitution's written opinion requirement.
In this respect, this court's decisions in attorney suspension and disbarment matters are similar to, and in my view functionally indistinguishable from, decisions granting a peremptory writ of mandate in the first instance. In mandate proceedings, a court's decision not to grant an alternative writ or an order to show cause does not excuse the court from its obligation to explain its reasons in writing when it grants a peremptory writ that is an enforceable judgment determining the parties' rights. (See Raima v. U.S. Industrial Fasteners, Inc. (1984) 36 Cal.3d 171, 178, fn. 6, 203 Cal.Rptr. 626, 681 P.2d 893.) So also with this court's attorney suspension and disbarment orders.
The majority cannot have it both ways. The majority insists that this court has not improperly delegated attorney discipline to the State Bar Court, and that this court's suspension and disbarment orders are the product of this court's exercise of its own original jurisdiction and this court's own judicial determination of the merits of the disciplinary proceeding. Yet the majority denies that in so determining the merits of a disciplinary proceeding this court renders a decision that determines a cause within the meaning of the state Constitution's written opinion requirement. These positions seem utterly irreconcilable. The majority is correct in concluding that attorney suspension and disbarment orders result from this court's judicial determination of the merits of attorney discipline proceedings. But, unlike the majority, I would accept what follows logically and unavoidably from this conclusion: Decisions in attorney suspension and disbarment matters determine causes and therefore must be in writing with reasons stated.

III. CONCLUSION
The state government grants individuals licenses to practice a variety of trades and professions, including those of attorney, doctor, dentist, veterinarian, real estate broker, contractor, motor vehicle dealer, and cosmetologist. In general, proceedings to suspend or revoke these occupational licenses occur before administrative tribunals and result in administrative orders that the licensee may challenge by a proceeding in superior court for administrative mandate. (Code Civ. Proc, § 1094.5.) In that superior court mandate proceeding, the licensee has the right to a hearing and, upon request, to a written decision. (Id., §§ 632, 1094.5.)
But attorneys do not have recourse to administrative mandate proceedings because their licenses are suspended or revoked not by an administrative determination, but by this court's orders. As a *324 consequence, under the majority's decision today, only attorneys can have their licenses suspended or revoked without a judicial hearing and a written judicial decision. This disparate treatment of attorneys raises serious due process and equal protection questions. I do not address these issues, however, because I conclude that the state Constitution's oral argument and written opinion provisions apply to attorney suspension and disbarment proceedings.
The majority asserts that this court can no longer spare the time and resources required to hold oral argument and write an opinion in every attorney suspension and disbarment proceeding. (Maj. opn., ante, 93 Cal.Rptr.2d at pp. 317-318, 993 P.2d at pp. 974-975.) Even if the majority is correct, as it may be, the proper solution is not an expedient but unreasonable construction of the state Constitution to deny attorneys the privileges granted to holders of all other occupational licenses. The Legislature has already given this court a better solution. In 1988, the Legislature amended Business and Professions Code section 6082 to permit review of an attorney discipline recommendation "by the California Supreme Court or by a California Court of Appeal in accordance with the procedure prescribed by the California Supreme Court." (Italics added.) Under the statute as amended, this court need only establish a suitable procedure, and the burden of giving disciplined attorneys their day in court can be broadly distributed among the Courts of Appeal. At current levels  attorneys sought review in roughly 40 suspension and disbarment matters in 1990 (see maj. opn., ante, at p. 317, 993 P.2d at p. 974)  these attorney discipline cases would not substantially add to the workload of the nearly 90 justices of the Courts of Appeal. Should the volume of attorney discipline cases at any point begin to strain the capacity of the Courts of Appeal, the number of Court of Appeal justices could be increased.
In this matter, I would issue a writ of review, hear argument, and render a written opinion.
Dissenting Opinion by BROWN, J.
Reluctantly, even ambivalently, I dissent. They say hard cases make bad law; the result here, however, is foreordained: the majority reaches the only provident conclusion possible in the current circumstances. But it is also true that, underlying its reasoning and result, one has to wonder at the practical value of what this court does under the procedures now prevailing in bar discipline cases. As the court itself has acknowledged only recently, changes in our own rules made in the wake of legislative amendments to the administrative procedures governing bar discipline proceedings "relieve the court of the burden of intense scrutiny of all disciplinary recommendations." (Cal. Supreme Ct., Invitation to Comment  Proposed Adoption of Rule 951.5, Cal. Rules of Court (Nov. 23, 1999) p. 2; see also Cal. Supreme Ct., Practices and Proc. (1997 rev.) pp. 3, 18-19, 25-26.) Moreover, the matrix of grantable issues identified in California Rules of Court, rule 954[2] appears to truncate the scope of our review. And in cases where no writ is sought, we usually content ourselves with less than that measure of "review." Unless, by dint of skill or luck, the issues are framed so they are deemed to fall within the ambit of rule 954, an attorney facing suspension or disbarment from the right to practice her profession gets no hearing, no opportunity for oral argument, and no written statement of reasons  from this or any other article VI court. (Cal. Const., art. VI, § 14; hereafter article VI.) Instead, she gets a summary denial of review, the one-line order. Is that enough? Regrettably, it seems that, for now at least, it will have to do.
*325 We should not, however, pretend the current legal order does not mark a transformation in the attorney discipline process, one in which a constitutional touchstone  meaningful judicial review by an article VI court  has been jettisoned. A decade ago, Justice Kaufman could trouble to write a vigorous dissent from an opinion of this court upholding summary administrative suspension of a lawyer under emergency circumstances. (Conway v. State Bar (1989) 47 Cal.3d 1107, 1126, 255 Cal. Rptr. 390, 767 P.2d 657.) That dissent continues to make persuasive reading today. Why? Because a like situation is presented here, following the 1988 legislative overhaul of the procedures governing attorney discipline. (Stats.1988, ch. 1159, § 1, p. 3699.) Should we care? More to the point, can we afford to care? Ten years have passed, and the majority sings the same refrain, even if substantively things are not the same as they were when this court filed between 20 and 40 State Bar opinions a term. Under the new regime, attorneys penalized for professional misconduct get less in the way of genuine judicial review of discipline than licensed nonattorneys do. The reasons for this paradox lie in the convoluted history of the legal profession and its intimate relation to the courts, coupled with the extraordinary growth in the number of lawyers admitted to practice in California over the past 30 years.
The contemporary anomaly is that that history has produced less in the way of judicial protection than our statutes give to, say, veterinarians and cosmetologists. Some of the circumstances that have contributed to that anomaly - the enormous growth of the legal profession in California and the consequent need for an elaborate disciplinary apparatus, for example - are matters lying beyond the control of this or any other court. Others, however - the threat posed by a growing legislative involvement in attorney discipline, the related bureaucratization of the disciplinary process  we conceivably might have mitigated. (See, e.g., Bus. & Prof.Code, § 6082 [jurisdiction to review attorney discipline lies in this court and the Court of Appeal].) As matters stand, and as the majority opinion attests, it is force of circumstance that obliges us to make our peace with the new legal order. The majority goes about that task studiously, employing the archaic lexicon of a bygone day to describe the new and different contemporary reality.
That new reality  what a pessimist might describe as the untoward merger of two branches of government in the regulation of attorneys  is especially worrisome as a matter of state constitutional law. For that reason also, it transcends parochial issues of professional discipline. Unlike Congress, by the text of the federal Constitution the legislature of a sovereign of limited powers, state legislatures possess plenary lawmaking powers. That is why structural principles of republicanism common to both state and federal governments  the tripartite division into legislative, executive and judicial branches  assume even greater significance where state government is concerned. What petitioner really objects to is the absence of any indication that, despite the elaborate administrative hoops through which attorneys facing discipline must jump, a court of law, a constitutionally founded judicial body, has considered the lawyer's claims on the merits before pronouncing judgment. It is not simply that judicial review ensures compliance with statutory commands. It does more, helping to sustain a complex of social values, maintaining a structural balance among the parts of government and, by its existence and vigorous exercise, protecting individual liberty.
What petitioner can legitimately ask from us is not procedural due process. Surely, the elaborate procedures provided attorneys subjected to the State Bar's disciplinary apparatus are sufficient to satisfy that concern. (See generally Rules Proc. of State Bar.) His complaint goes to a different flaw altogether. It is *326 founded on the rock of the constitutional right to meaningful judicial review of government acts intended to deprive someone of the means of livelihood. Review by a constitutional court, review by real judges whose allegiance is to the judiciary, to its standards and ideals  to the rule, in short, of law. Review, moreover, that is seen, observed in the form of reasoned judicial opinions, and in the ritual of oral argument. In combination, these features make up hallowed ground, for they comprise a signal feature of our democracy  the protection of the individual from executive and legislative overreaching by neutral magistrates, magistrates whose decisions are constrained by objective principles of judicial reasoning and by precedent, and whose rulings are an open book. (See Bickel, The Morality of Consent (1975) p. 26 ["Confined to a profession, the explication of [legal] principle is disciplined, imposing standards of analytical candor, rigor, and clarity."].) Lacking, as Alexander Hamilton wrote, "either the sword or the purse," the judiciary exists by virtue of "merely judgment." (Hamilton, The Federalist No. 78 (Rossiter ed.1961) p. 465; see also Scalia, The Rule of Law as a Law of Rules (1989) 56 U. Chi. L.Rev. 1175.) That is the essence of the judicial function; that is what is missing in this sui generis special proceeding over which we exercise an inherent authority. (See, maj.opn., ante, passim.)
Judicial judgment  reasoned decisions, rather than decisions with reasons  is the constitutional counter to the appetitive coordinate branches of government, implicit in the architecture of state as well as federal government. We expect, and justifiably so, a different discipline from a court than from a bureaucracy. And because the powers of state government are not textually limited, a close adherence to the principles of the separation of powers becomes all the more critical to constitutional government. Courts must be especially vigilant, must vigorously resist encroachments that heighten the potential for arbitrary government action. The existence of the administrative state is a legislative admission of an inability to articulate general rules governing conduct. If legislative delegation enlarges the scope of administrative action, it enlarges the scope for arbitrariness as well. When the judiciary cedes its authority to a bureaucracy, when it permits the Legislature to determine the scope of judicial review, the potential for arbitrary government action rises exponentially.
Nothing so well illustrates the through-the-looking-glass quality of the majority's reasoning as its rejection of petitioner's claim that his case qualifies as a "cause" under article VI and must be decided "in writing with reasons stated." The majority's reasoning is fine, as far as it goes. It omits, however, an observation that ought to be decisive  this court is the only judicial body involved in the attorney discipline process. An attorney's petition for review to this court marks the first and only time in the disciplinary process that article VI judges are asked to enter the case. For that reason, and for that reason alone, our decision, even if it is a summary denial of review, necessarily decides a cause. The majority makes an able attempt to paper over this reality, but in doing so it is compelled to adopt an empty formalism.
The reality is that, as the legal cartel of the past disintegrates, as the demand for legal services continues to surge, the profession has lost its guild-like character and become more like other occupations. (Cf. Posner, Overcoming Law (1995) pp. 63-70; Kronman, The Lost Lawyer (1993) pp. 273-306.) This trend toward occupational homogeneity is reflected in the elaborate administrative apparatus for attorney discipline. But, and again paradoxically, dynamic professional growth has produced contradictions, contradictions that are not lost on attorneys who defend lawyers facing disciplinary charges. By letter brief, an organization of State Bar defense counsel *327  the Attorney Discipline Defense Counsel  points out that vocational licensees enjoy greater judicial rights than lawyers. And they are right. The host of practitioners of this and that trade, licensed and regulated by government agencies, has access to administrative mandamus in discipline cases, where judges of article VI courts review questions of law de novo and questions of fact under the substantial evidence standard. They get both a full plate of administrative due process and real judicial review. Before honest-to-God judges. (See Code Civ. Proc., § 1094.5.)
That is the way attorney discipline cases used to be decided, in the old days, before the 1988 amendments to the State Bar Act. True, one of the effects of the prior order was the obligation of this court to carry on its docket and decide  almost always after oral argument, always by written opinion  at least 20 State Bar disciplinary cases each term. The substantiality of that largely fact-intensive task cannot be gainsaid. But the principled answer to that difficulty, if difficulty it was, is not to fold the attorney discipline system into the ceaselessly expanding administrative state, with the remark that our summary denial of review qualifies as review on the merits because it's ... well, sui generis.
Alas, attorneys faced with the loss of their livelihoods must now make do with the State Bar Court  an entity performing judicial functions but, despite the competence of its members, exercising no judicial powers  and our summary denials, unless the petition can be said to satisfy the criteria of rule 954. Yet the majority continues to pay lip service to the old regime, even using the same words and citing the same cases to paste over a hollowing out of meaningful judicial review. We have tinkered with our rules so that it appears nothing has changed. But these are only words; the reality is different. In point of practice, in bar disciplinary cases in which we decline to grant review, we issue a pro forma order executing the State Bar Court's "recommended" discipline. (See rule 954(a).) In those cases where review is not sought, it is questionable whether any judicial act of substance takes place. Oh, to be sure, our rules purport to alleviate these concerns. Rule 953, for example, provides for entry of orders by this court, even if ministerial, rather than adopting the legislative model that makes the State Bar Court's recommendations self-executing. (Compare rule 953(b) with Bus. & Prof.Code, § 6084, subd. (a).) Still, we no longer make an individual decision on the imposition of discipline. And the situation is not much improved if review is sought and denied; the rule gives us no choice but to impose the recommended discipline. (Rule 954(b).)
At the heart of the majority opinion is the supposition that review by any other name is still review and passes constitutional muster; that due process is satisfied by any process, however much the decision makers may be driven by bureaucratic agendas or political ties. In this corner of the law, at least, we seem to be presiding over a union of the legislative and judicial components of government. It may be efficient; it certainly isn't pretty. And because it seems antithetical to the constitutional design, I dissent.
NOTES
[1] Attorney Jerome Berg, as amicus curiae, has asserted similar contentions in support of petitioner's position.
[2] Further undesignated statutory references are to the Business and Professions Code.
[3] Further undesignated rule references are to the California Rules of Court.
[4] Article VI, section 1, states: "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, and municipal courts. All courts are courts of record."
[5] As we shall discuss (pt. IV, post), procedures governing attorney disciplinary proceedings satisfy the requirements of the due process clause.
[6] Section 6082 refers to review of actions of the State Bar's board of governors. Section 6086.5 clarifies that the term "board" as used in section 6082 includes the State Bar Court.
[7] A State Bar decision ordering the involuntary inactive enrollment of an attorney in exigent circumstances (§ 6007, subd. (c)) may become effective before we consider the matter, but only because the order is subject to our immediate, independent review. (Conway v. State Bar (1989) 47 Cal.3d 1107, 1120-1123, 255 Cal.Rptr. 390, 767 P.2d 657.)
[8] Amicus curiae contends that cases concerning review of PUC decisions, such as Consumers Lobby, supra, 25 Cal.3d 891, 160 Cal.Rptr. 124, 603 P.2d 41, are distinguishable from the present case, because the PUC has express constitutional authority to establish procedures and render decisions (Cal. Const., art. XII, §§ 2, 4, 6), whereas the State Bar lacks such constitutional authority and may be abolished at any time by the Legislature. This characterization of the State Bar is inaccurate, however. Although initially created by the Legislature, the State Bar is a constitutional entity, expressly acknowledged as an integral part of the judicial function. (Art. VI, § 9; In re Attorney Discipline System, supra, 19 Cal.4th at pp. 598-599, 79 Cal.Rptr.2d 836, 967 P.2d 49.) In its role as our administrative arm in disciplinary matters, the State Bar provides this court with assistance in exercising our inherent judicial power. Thus, the State Bar is constitutionally authorized to conduct the preliminary investigation and determination of complaints, and to make recommendations regarding the appropriate discipline.
[9] Former sections 276 and 277 of the Code of Civil Procedure authorized the Courts of Appeal to admit applicants to the practice of law. (Stats.1905, ch. 8, §§ 1, 2, pp. 5-6.)
[10] See also Metropolitan Water Dist. v. Adams, supra, 19 Cal.2d at page 468, 122 P.2d 257 (a judgment in a cause is the final determination of the rights of the parties "`in an action or proceeding'").
[11] The dissenting opinion of Justice Kennard (post, 93 Cal.Rptr.2d p. 322, 993 P.2d p. 978) distinguishes these decisions on the ground that an appellate court denying a petition for writ of review of such an administrative decision "merely permits enforcement of an order of ... [an] administrative agency," whereas only this court renders orders imposing attorney discipline. In both situations, however, the court exercises original jurisdiction (see art. VI, § 10), renders the first and only decision on the merits in a judicial proceeding, and makes a final judicial determination of the rights of the parties. (Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd., supra, 24 Cal.3d at pp. 349-351, 156 Cal.Rptr. 1, 595 P.2d 579; Consumers Lobby, supra, 25 Cal.3d at p. 901, 160 Cal.Rptr. 124, 603 P.2d 41; Geibel v. State Bar, supra, 14 Cal.2d at pp. 146-149, 93 P.2d 97.) The circumstance that in State Bar matters the court considers on the merits a nonjudicial recommendation, rather than a nonjudicial order, provides no legal basis for concluding that our rulings denying petitions for writ of review in State Bar proceedings determine causes, but that our rulings denying petitions for writ of review of administrative orders do not. The foregoing cases also refute the contention that our decision necessarily determines a cause if this court is the only judicial entity involved in the proceeding. (Dis. opn. of Brown, J., post, p. 327, 993 P.2d p. 983.)

In response to the assertion that attorneys are the only individuals whose state occupational licenses can be revoked or suspended without "their day in court" and a "judicial hearing" (dis. opn. of Kennard, J., post, pp. 320, 324, 993 P.2d pp. 976, 980), or without "genuine" and "real" judicial review (dis. opn. of Brown, J., post, pp. 980, 983, 993 P.2d pp. 324, 327), we observe that attorneys are the only professional licensees who, as a matter of right in every case, can obtain judicial review on the merits by the highest appellate court in the state, before their license can be revoked or suspended. As explained previously (ante, pp. 307-311, 993 P.2d pp. 964-968), both this court and the United States Supreme Court have concluded that the absence of a written opinion or an opportunity for oral argument in this context neither affects the quality of our decisions nor detracts from their efficacy as judgments.
[12] By separate order, we shall deny the petition for review and impose the discipline recommended by the State Bar Court.
[1] In Lewis v. Superior Court, supra, 19 Cal.4th 1232, 82 Cal.Rptr.2d 85, 970 P.2d 872, a majority of this court, while acknowledging that "[t]he right to oral argument on appeal is well established in this state" (id. at p. 1253, 82 Cal.Rptr.2d 85, 970 P.2d 872), concluded that the state Constitution does not grant litigants a right to oral argument when a Court of Appeal grants a peremptory writ of mandate in the first instance (at pp. 1260-1261, 82 Cal.Rptr.2d 85, 970 P.2d 872). Because in Lewis this court construed a different constitutional provision in the context of a mandate proceeding, not an attorney discipline proceeding, and because a judge is not bound to accept previous constitutional interpretations of the judge's own court (see Brennan, In Defense of Dissents (1986) 37 Hastings L.J. 427, 436-437), I continue to adhere to my dissenting views in Lewis.
[2] Hereafter all rule references are to the California Rules of Court.